## THE BOSTON WATER POWER COMPANY *versus* THE BOSTON AND WORCESTER RAIL-ROAD CORPORATION *et al.*

In order to sustain a demurrer for want of jurisdiction, pleaded to the whole of a bill in equity, it must appear that no substantial and essential part of the complaint is within the equity jurisdiction of the Court.

The plaintiffs in a bill in equity praying for an injunction, allege that a corporation was authorized by its act of incorporation, to build a dam over an arm of the sea, (the shores of which were owned by individuals,) and from this main dam to certain upland above it to run a cross dam, so as to make on one side of the cross dam a full basin, and on the other an empty or receiving basin, and to cut raceways from the full basin to the receiving basin, and to use, sell or lease the water power thus created ; that the corporation erected the dams and created thereby a water power sufficient to turn twenty pairs of common mill-stones, and performed all the duties required of them by the legislature, and thereby became entitled to certain exclusive privileges ; that the corporation, with the assent of the legislature, transferred all the water power and all their rights, privileges and duties respecting the same, to the plaintiffs ; that the plaintiffs thereby became entitled t the exclusive right and privilege of forever using the soil included within the lim s of the full basin, for the purpose of flowing the same by the tide waters, and of keeping the soil included within the limits of the receiving basin uncovered by the tide waters, and of using it to receive and carry off the waters flowing from the full basin, and of holding and using all the water power which can be and is created by the dams, without any hindrance, obstruction or diminution of the capacity of the basins, or of the right to cut raceways in the cross dam ; and that the defendants, pretending to act under the authority of certain statutes, threaten to build a rail-road through the basins and over the cross dam, and have actually commenced building the same by driving piles in both of the basins, and that the building of it will diminish the capacity of the basins and destroy two mill sites on the cross dam, whereby the water power will be diminished and the franchise of the plaintiffs abridged. It was *held*, that the right of using the land of others in the basins, for the purpose of creating water power, was a franchise or ease-ment ; that such a franchise or easement in the basins was sufficiently set forth in the bill ; that the acts of the defendants in filling up portions of the basins for the purpose of making a rail-road, were, if illegal, a disturbance of the plaintiffs in the enjoyment of their franchise, for which the remedy at law would be an action on the case ; that such an injury is, in strict legal consideration, a nuisance, and therefore is within *St.* 1827, *c.* 88, giving this Court jurisdiction in equity in cases of nuisance ; that it did not appear on the face of the bill, that the plaintiffs had an adequate and complete remedy at law, and that the matter of complaint was a more fit subject for a bill in equity.

To a bill in equity, in which it was alleged that the plaintiff was the owner of a water power, and that he had leased a part of it, and that the defendant had by a nuis-ance diminished the water power, the defendant demurred because the lessee was not made a party plaintiff ; but as it did not appear on the face of the bill, tha' the interest of the lessee would be affected by the diminution of the water power there being a surplus beyond the quantity leased, the demurrer was not sustained

BILL in equity, filed in March 1833, containing the following allegations.

By *St.* 1814, *c.* 39, divers persons were incorporated by the name of the Boston and Roxbury Mill Corporation, and by that statute and those of 1816, *c.* 40, 1819, *c.* 65, and 1822, *c.* 34, the corporation was authorized to purchase and hold real and personal estate ; to build a dam from Charles street at the westerly end of Beacon street, in Boston, to Sewall's point, in Brookline, so as to exclude the tide water and form a reservoir or receiving basin of the space between the dam and Boston Neck ; to build another dam from Gravelly point, in Roxbury, to the dam first mentioned, so as to inclose the tide water within Tide-Mill creek ; to cut any number of convenient raceways from the full basin to the receiving basin ; to maintain and keep up all their works forever ; and to lease or sell the right of using the water upon any terms and in any manner they might think proper ; and it was provided, that no other person should have a right to dispose of the water, without the consent of the corporation. The corporation was authorized to make over the main dam a good and substantial road, and to receive toll for passing over it ; and it was provided, that the legislature might suspend the right of taking toll until the dam should be so far completed, as that mills could be established, employing a power equal to turning twenty pairs of common millstones, and until the corporation, or its assigns, should have erected mills employing a power equal to ten pairs. It was further provided, that any person sustaining any damage by the building of the dams, or from the exercise of any of the powers given to the corporation, might apply to the Court of Common Pleas for the county in which the land lies, for a committee to estimate the damage, &c. Certain duties and obligations in favor of the public, set forth at large in the bill, were imposed upon the corporation, and certain penalties and forfeitures created to secure the performance of its undertakings.

These acts were accepted by the corporation, whereby a contract conformable to the terms of the acts, was created between the corporation and the Commonwealth.

Boston
Water
Power Co
*v.*
Boston and
Worcester
Rail-Road
Corp.

Boston
Water
Power Co.
v..
Boston and
Worcester
Rail-Road
Corp.

This contract was performed on the part of the corpo-
ration, by the erection of the works required, being works
of great magnitude and expense, and of great public con
venience and utility, wholly constructed out of the private
funds of the corporation, and since maintained at great
expense in like manner, and a water power was created
sufficient for the turning of twenty pairs of common mill-
stones, and mills were erected employing a power equal
to turning ten pairs, and all the other duties and obligations
imposed by the statutes were performed ; and thereby the
corporation became entitled to the exclusive right and priv-
ilege of forever using the soil included within the limits
of the full basin, for the purpose of flowing and keeping
the same covered with water to the height and extent of
surface to which the tide naturally flowed the lands sur-
rounding the basin before the building of the dam, and also
the exclusive right and privilege of forever keeping the
soil included within the limits of the receiving basin free
from, and uncovered by the tide waters, and of using the
same as and for a reservoir or receiving basin to receive
and carry off the waters flowing from the full basin through
the raceways cut, or which should thereafter be cut, through
the cross dam, and the exclusive right and privilege of
cutting raceways through any part of the cross dam, and
of using or disposing of the water power thereby created
by lease or otherwise ; and the corporation, relying upon
this contract, erected and put in operation mills requiring
a quantity of water equal at all times to the turning of three
pairs of common mill-stones, and leased, on long terms
yet unexpired, the privilege of drawing water equal to the
turning of fourteen pairs of common mill-stones, receiving
from the lessees valuable rents, liable to be suspended or
lost by insufficiency of water power, and the lessees erected
and put in operation mills using the whole water power so
granted to them.

The complainants were incorporated by the name of the
Boston Water Power Company, on June 12, 1824, (*St.*
1824, *c.* 26,) with power to purchase and hold any quantity
of the water power created by the establishment of the

Boston
Water
Power Co.
. v.
Boston and
Worcester
Rail-Road
Corp.

dams above mentioned. They accepted the act of incorporation, and entered into an indenture dated May 9, 1832, (and which is made a part of the bill,) between themselves and the Boston and Roxbury Mill Corporation.

By this indenture the Boston and Roxbury Mill Corporation made a division of their property, retaining the main dam for the purpose of the road, and covenanting to keep it in repair except as to the gates and sluices, and, for the sum of 175,000 dollars, transferring to the plaintiffs all the grantors' right to the land on the south side of (above) this dam, and all the water power, and all their privileges, contracts, duties and obligations respecting the water power; and the plaintiffs allege that they thereby, so far as regards the water power, became entitled to the exclusive right and privilege of forever using the soil included within the two basins, for the purposes before mentioned, and to all the water power which can be and is created by the constructing and maintaining of the dams, without any hindrance, obstruction, interruption or diminution of the capacity of the full and receiving basins respectively, and to all the exclusive rights and privileges above mentioned as belonging to the Boston and Roxbury Mill Corporation.

But the Boston and Worcester Rail-Road Corporation, which has no funds to respond to damages recovered at law, except such as are raised by assessments limited to the expense of constructing their rail-road, and incidental expenses, and the South Cove Corporation, and other persons, confederating together under various groundless pretences, deny and disregard these vested rights, and openly threaten to build a rail-road through the full basin, and over the cross dam, and through the receiving basin, and have actually commenced building the same by driving piles in both of the basins; and have taken for their road a strip of twenty-six feet wide through the full basin, and five rods wide through the receiving basin.

The building of the rail-road over the cross dam destroys two valuable mill sites, and takes away the right of cutting raceways in that part of it. The construction of the rail-road through the full basin will directly diminish its

Boston
Water
Power Co.
*v.*
Boston and
Worcester
Rail-Road
Corp.

capacity, and will also obstruct the flow of the water to the southerly part of it. In ordinary tides, the receiving basin is now just sufficient in capacity to hold all the water which flows from the full basin, until its escape by the ebb tide, without throwing back-water on the mills, and, in neap tides, is now insufficient, and back-water is actually created ; the space taken for the rail-road is nine acres and upwards, and a great part of it is to be filled up with solid embankment, which will greatly diminish the capacity of the basin, and so increase the back-water. The building of the rail-road, therefore, through and across the two basins and cross dam, will greatly diminish the water power, and abridge the franchise vested in the complainants, of using the soil and space between their main dam and Boston Neck for their basins, to their irreparable injury, and so far as their rights are concerned, will be a nuisance.

The pretences of the Boston and Worcester Rail-Road Corporation are, that they are authorized by their act of incorporation and the acts additional thereto, to locate and construct their rail-road in or near Boston and thence to Worcester, in such manner and form as they should think expedient, and that as they thought it expedient to adopt this location, they are justified in it ; and that the public necessity and convenience requiring this location, the legislature might authorize it, notwithstanding the prior grant of the franchise now owned by the complainants.

The bill concludes with a prayer for a perpetual injunction and other relief.

The act incorporating the Boston and Roxbury Mill Corporation, and the several acts in addition thereto, and the act incorporating the Boston Water Power Company, are made a part of the complainants' bill.

The Boston and Worcester Rail-Road Corporation demur to the bill, assigning for cause, that this Court has not jurisdiction by the statutes of the Commonwealth, or otherwise ; that the lessees named in the bill are not made parties thereto ; and that the complainants have not stated such a case as entitles them to relief.

*March 18th.*     *Greenleaf*, *Fletcher*, and *F. Dexter*, in support of the de

Boston
Water
Power Co.
*v.*
Boston and
Worcester
Rail-Road
Corp.

murrer, contended that the lessees of the water power were interested in the subject matter of the bill, as it is stated that in neap tides the power is not sufficient for the pres-ent mills, and they ought therefore to have been made par-ties, in order that the judgment might conclude all persons. *London* v. *Richmond,* 2 Vern. 422 ; *Penn* v. *Baltimore,* Ridgw. 335 ; *West* v. *Randall,* 2 Mason, 189 ; *Cornish* v. *Gest,* 2 Cox, 27 ; 3 Swanston, 139, 150, notes ; *Poore* v. *Clark,* 2 Atk. 515 ; *Green* v. *Poole,* 5 Bro. P. C. 504 ; *Elmendorp* v. *Taylor,* 10 Wheat. 166 ; *Mallow* v. *Hinde,* 12 Wheat. 197 ; *Hallett* v. *Hallett,* 2 Paige, 15 ; *St.* 1833, c. 187 ; *Ellis* v. *Welch,* 6 Mass. R. 251 ; *Boston and Rox-bury Mill Corp.* v. *Gardner,* 2 Pick. 33 ; Mitf. Pl. 133, 146 ; *Brown* v. *Ricketts,* 3 Johns. Ch. R. 553 ; *Wiser* v. *Blachly,* 1 Johns. Ch. R. 437 ; *Davoue* v. *Fanning,* 4 Johns. Ch. R. 199.

This case does not come within the *St.* 1827, c. 88, giving the Court power to " hear and determine in equity, any matter touching waste or nuisance, in which there is not a plain, adequate and complete remedy at law." It is not a case of nuisance, but of trespass *quare clausum fregit.* The question is not whether a court having full chancery powers would interfere, but whether the bill pre-sents a case of nuisance *at common law.* And the criterion of this is, whether the remedy at law would be by an ac-tion of the case, or an action of trespass ; if *trespass* will lie, *case* will not, and the cause of action is not a nuisance. 3 Bl. Com. 216, c. 13 ; Com. Dig. *Action on the Case, B* 8. The basins are the complainants' *close* ; *St.* 1814, c. 39, § 2 ; the complainants have, as they allege, the exclusive right to the soil, for the purpose of creating water power ; and so it was determined in the case of *Boston and Rox-bury Mill Corporation* v. *Newman,* 12 Pick. 467 ; and this is sufficient to enable them to maintain trespass *quare clau-sum* against a party who enters upon the soil and with di-rect force interferes immediately (not consequentially) with the water power. In *Clap* v. *Draper,* 4 Mass. R. 268, *Parsons* C. J. says, " It appears to be a principle of law well settled, that where a man has a separate interest in the

Boston
Water
Power Co.
*v.*
Boston and
Worcester
Rail-Road
Corp.

soil for a particular use, although the right of soil is not in him, if he be injured in the enjoyment of his particular use of the soil, he may maintain trespass *quare clausum fregit.*" And this is the doctrine from the time of the Year Books. 1 Rol. Abr. 105, *pl.* 6 ; Co. Lit. 4 *b* ; *Ashmead* v. *Ranger*, 2 Salk. 638 ; *The King* v. *Watson*, 5 East, 486 ; *Welden* v. *Bridgewater*, Cro. Eliz. 421 ; *Burt* v. *Moore*, 5 T. R. 329 ; *Wilson* v. *Macreth*, 3 Burr. 1824 ; *Crosby* v. *Wadsworth*, 6 East, 602 ; *Harker* v. *Birkbeck*, 3 Burr. 1563 ; *White* v. *Moseley*, 8 Pick. 356 ; *Shapcott* v. *Mugford*, 1 Ld. Raym. 188 ; *Reynolds* v. *Clarke*, 2 Ld. Raym. 1403 ; *Wilson* v. *Smith*, 10 Wendell, 324 ; *Stewart* v. *Doughty*, 9 Johns. R. 113 ; *Austin* v. *Sawyer*, 9 Cowen, 39 ; *Tompkinson* v. *Russell*, 9 Price, 287 ; 2 Saund. Pl. and Evid. 867 ; *Rehoboth* v. *Hunt*, 1 Pick. 224 ; Dyer, 285 *b* ; *Erie &c. Turnpike* v. *Cochran*, 2 Hall's Law Journal, 88 ; *Smith* v. *Rutherford*, 2 Serg. & Rawle, 360 ; *Cotteral* v. *Cummins*, 6 Serg. & Rawle, 349 ; *Dyson* v. *Collick*, 5 Barn. & Ald. 600 ; 2 Rol. Abr. 545, *pl.* 1 ; 1 Wms's Saund. 24, note 1.

Admitting that the facts alleged show a nuisance, still the complainants cannot maintain a bill in equity, because they have a plain, adequate and complete remedy at law ; for past damages, by compensation in money, for prospective, by abatement of the nuisance. *Charles River Bridge* v *Warren Bridge*, 6 Pick. 395, 397 ; *Messiter* v. *Wright*, ante, 151 ; *Fishmongers' Co.* v. *East India Co.* 1 Dickens, 164 ; *New York* v. *Mapes*, 6 Johns. Ch. R. 46 ; *Jerome* v. *Ross*, 7 Johns. Ch. R. 315 ; *Newburgh Turnp. Co.* v. *Miller*, 5 Johns. Ch. R. 101.

*J. Mason* and *C. G. Loring*, for the plaintiffs. The acts of the legislature respecting the Boston and Roxbury Mill Corporation and the Boston Water Power Company, are a part of the bill, and taken in connexion with the rest of the bill, they show a possessory right to the soil so far as to allow the erection of the dams, and for an injury to them the plaintiffs may maintain trespass ; but to the soil in the basins the plaintiffs have no right, except for the purpose of maintaining a water power, by using one of them for a

full basin, and the . other for a receiving basin ; in other words, they have only an easement in the basins.

In the statute under which the bill is brought, the word *nuisance* is used in a popular sense. 3 Bl. Comm. 5, 216, 218. A continued trespass is a nuisance. But we contend, that from the nature of the plaintiffs' property, the facts alleged present a technical nuisance. They show an injury to an easement or incorporeal hereditament, for which the remedy at common law is *case*, and not *trespass*. Com. Dig. *Action on the case for disturbance*, *A* 2 ; *Cook* v. *Hull*, 3 Pick. 269 ; *Baker* v. *Sanderson*, 3 Pick. 348 ; *Sumner* v. *Tileston*, 7 Pick. 198 ; *Fiske* v. *Framingham Manuf. Co.* 12 Pick. 68 ; *Boston and Roxbury Mill Corp.* v. *Newman*, 12 Pick. 467 ; *Challenor* v. *Thomas*, Yelv. 143 ; *Monckton* v. *Pashley*, 2 Ld. Raym. 974 ; *Wetmore* v. *Robinson*, 2 Connect. R. 529.

If the acts of the defendants do not constitute a nuisance at common law, they do in equity, and the rules of equity are to be resorted to in construing the statute under which the bill is brought. Jeremy on Eq. Jurisd. 310 ; *Coulson* v. *White*, 3 Atk. 21 ; Eden on Injunctions, 163 ; *Mitchell* v. *Dors*, 6 Ves. 147 ; *Hanson* v. *Gardiner*, 7 Ves. 305 ; *Mogg* v. *Mogg*, 2 Dickens, 670. Injuries to water-courses are a well known subject of chancery interference in England, on the ground of nuisance, and the legislature must be supposed to have referred to them in this statute. *Lane* v. *Newdigate*, 10 Ves. 194 ; *Robinson* v. *Byron*, 1 Bro. C. C. 588 ; *Gardner* v. *Newburgh*, 2 Johns. Ch. R. 162 ; *Chalk* v. *Wyatt*, 3 Meriv. 688 ; *Van Bergen* v. *Van Bergen*, 3 Johns. Ch. R. 282 ; Angell on Water-Courses, 21 to 28.

The plaintiffs have not an adequate remedy at law. The injury will be irreparable. Jeremy on Eq. Jurisd. 310, 424 ; *Crowder* v. *Tinkler*, 19 Ves. 622 ; *Att. Gen.* v. *Nichol*, 16 Ves. 342 ; *Bathurst* v. *Burden*, 2 Bro. C. C. 64 ; *Charles River Bridge* v. *Warren Bridge*, 6 Pick. 396, 397, 398.

It does not appear by the bill, that the rights of the lessees will be affected by the acts of the defendants, and the Court therefore will not call them in on demurrer to the bill for want of parties ; *Townsend* v. *Auger*, 3 Connect.

Boston
Water
Power Co.
v.
Boston and
Worcester
Rail-Road
Corp.

Boston
Water
Power Co.
v.
Boston and
Worcester
Rail-Road
Corp.
—————
June 22d.

R. 354 ; *Wendell* v. *Van Rensselaer*, 1 Johns. Ch. R. 349
*Wiser* v. *Blachly*, 1 Johns. Ch. R. 437. And it was not
necessary to join them in the bill, as their interests are rep-
resented by those who are made plaintiffs. *Adair* v. *New
River Co.* 11 Ves. 429 ; *Wilkins* v. *Fry*, 1 Meriv. 244.

SHAW C. J. delivered the opinion of the Court. Both
parties in the present controversy are incorporated companies,
claiming rights under several acts of the legislature, professing
to have one common design and purpose, that of promoting
public improvements ; and as the powers respectively claimed
by them, under the acts and grants of the sovereign authority
of the State, have come into conflict, it becomes necessary
for the Court to decide between them. Two general ques-
tions naturally present themselves for consideration ; namely,
what those rights are, and whether the remedy now sought by
the complainants, in the form of a suit in equity, is the proper
mode of redress. Upon the preliminary objection taken to
the jurisdiction of the Court as a court of equity, by a general
demurrer to the bill, the latter question alone is now open ;
but as the form of the remedy must essentially depend upon
the nature of the rights violated, both questions must, to a
certain extent, be considered. The direct question is, whether
this Court has jurisdiction of the cause, under the statute
vesting in this Court the powers of a court of equity, in all
cases of waste and nuisance. *St.* 1827, *c.* 88. The authority
is to " hear and determine in equity any matter touching waste
or nuisance, in which there is not a plain, adequate and com-
plete remedy at law."

Several grounds are taken by the complainants, to show
that the subject matter of their complaint is within the true
meaning and construction of the statute, and so is within the
jurisdiction of the Court as a court of equity ; one of which
is, that it is technically and strictly a *nuisance*, at common
law, that the legal remedy for the injury done to their rights,
by the acts complained of, would be an action on the case,
and not an action of trespass, and therefore that the equity
jurisdiction of the Court extends to and embraces it, by the
plain words of the statute.

It may be proper, by way of preliminary remark, to state.

that as this is a general demurrer to the bill, in order to sustain it, it must appear that no substantial and essential part of the complaint is within the provisions of the statute.[*]   And, therefore, if the plaintiffs set forth mixed rights, consisting in part, of a right of soil, and of possession, in certain parts of the land described in their bill, as those upon which their dams and permanent structures are erected, in order to pen up the water, and use and appropriate it to the purposes of creating and maintaining mill powers, and in part, of a franchise and easement, consisting in a right to have the water flow freely and unobstructed over other lands, and the acts complained of are an injury to both these rights, the demurrer cannot be sustained, because the injury to the easement and incorporeal hereditament, is technically a nuisance, and within the statute.

The rights claimed by the plaintiffs, depend entirely upon the acts of the legislature, and the nature and character of them must be determined by those acts.   They do not purport to make a grant of land, or the general right of property in any land whatever, and therefore the legal character of the right, interest or property, which the plaintiffs acquire, must be inferred from the uses, to which it appears by the acts, to have been intended to appropriate it.   As they were authorized to erect certain dams, sluices and other permanent structures, it may well be inferred, that as an exclusive possession of the soil would be necessary both to erect and to maintain these structures, it was intended to vest in them a right of possession, so far as might be necessary to protect and preserve those works, and for so long a time as might be necessary for that purpose.   If, therefore, the only damage complained of, were the damage done to these works, it would certainly afford strong ground to contend, that the damage complained of was a violation of the plaintiffs' right of possession, for which trespass *quare clausum* is the appropriate remedy.   *Wilson* v. *Smith*, 10 Wendell, 324.   But the injury done to the plaintiffs' works, forms but a very small part of the plaintiffs' complaint.   The *gravamen* of the complaint

*Margin note:* Boston Water Power Co. *v.* Boston and Worcester Rail-Road Corp.

---

[*] See *Livingston* v. *Story*, 9 Peters's Supr. C. Rep. 633.

Boston
Water
Power Co.
*v.*
Boston and
Worcester
Rail-Road
Corp.

is, the filling up with solid materials a considerable portion both of their full and receiving basins, thereby to diminish their capacity, to check the free current and flow of the water from one part of these respective inclosures to another, and thereby to diminish the plaintiffs' water power. But the right of making use of the land of others, whether it be that of the public or of individuals, for a precise and definite purpose, not inconsistent with a general right of property in the owner, especially, where it is for a public use, is in legal contemplation an easement, or franchise, and not a grant of the soil, or general property. And, upon the best consideration which we have been able to give to these statutes, the Court are all of opinion that, so far as the right of flowage is concerned, the right conferred was a franchise.

It seems to be no valid objection to this view of the case, that the easement is of such a character as to deprive the owner of all useful or available beneficial interest in the land. In case of land appropriated to the use of a turnpike corporation, although the corporation obtains the entire use of the surface of the land, as well for use as a travelling path, as for collecting gravel, earth and materials for constructing it, and although in point of fact, in assessing damages for the owner in such case, the whole value of the land is usually given, deducting nothing for the general right of ownership, yet it is clearly held, that such right of property in the original owner is not divested, the right of the corporation is an easement only. *Adams* v. *Emerson*, 6 Pick. 57.

So it seems to us in the present case, the legislature intended to confer upon the plaintiffs a franchise or easement, for public purposes, two of which are prominently set forth in the acts ; the one, to have an extensive right of flowage for mill purposes ; the other, for a right of way. The original grantees, under the sanction of the legislature, have divided these distinct interests, and the plaintiffs now claim all those rights, which were conferred on the original grantees, so far as they relate to the grant for mill purposes. As the acts of the legislature purport to confer upon the plaintiffs a right of flowage only, and the rights necessarily incident thereto, as the enjoyment of such right of flowage does not necessarily

draw after it a right of property or an exclusive right of possession, and as these are not necessary to its enjoyment, no rule of construction requires, that a larger grant should be considered as conferred by it, than that of an easement, which fully satisfies it.

The Court are also of opinion, that the manner in which the plaintiffs have stated their rights in their bill, is not inconsistent with this view as constituting a franchise, and not an exclusive right of possession. There is certainly much weight in the suggestion, that they have set out the acts of the legislature at large, and made them part of their bill, and profess to claim such rights only as these acts confer, and therefore if in summing them up, they should state them in terms which, if they stood alone, might be deemed the averment of a right of property or of possession, still this statement is to be qualified by this reference to the acts of the legislature, and this statement must be deemed to be the statement of an inference from all the foregoing particulars, and therefore to be restrained and made definite, by the several provisions in their acts. But without relying much upon this suggestion, we are of opinion, that the statement in the conclusion of the bill, taking it as it must be taken, in connexion with the subject matter of the bill, is the statement of a franchise and not of a right of property in the reservoirs.

After setting forth the acts of the legislature, the acts of the Boston and Roxbury Mill Corporation under them, and the assignment by the Boston and Roxbury Mill Corporation, to them, the Boston Water Power Company, they proceed to state, their right to have and enjoy the exclusive right and privilege of forever using the soil included within the limits of the full basin for the purpose of flowing, &c. and of keeping the soil included within the limits of the receiving basin free from and uncovered by the tide waters, and using the same to carry off, &c. and of holding and using all the water power, &c. without any hindrance, &c. or diminution of the capacity of the full and receiving basins respectively, &c. referring to the acts of the legislature. The exclusive right claimed, is not a right to the soil, exclusive of all other persons, for all other purposes, but a right exclusive of that of all

*Margin:* Boston Water Power Co. v. Boston and Worcester Rail-Road Corp.

Boston
Water
Power Co.
v.
Boston and
Worcester
Rail-Road
Corp.

others to use for a like purpose, or a purpose inconsistent with their right thus to use it.

The manner in which the disturbance is stated, and the damage occasioned by the defendants' contemplated works, confirm this view of the nature of the plaintiffs' complaint, and of the rights which they allege to have been interrupted. They aver, indeed, as one of the incidental injurious consequences of the defendants' works, that the plaintiffs are prevented from occupying two valuable mill-sites ; but the *gravamen* of the complaint is the filling up, with piles and other solid materials, a considerable portion of the full and receiving basins, diminishing their respective capacities and the mill power derived from them, preventing the free current of the water from one part to another of these basins ; so that the subject matter of complaint, is an injury to the plaintiffs in their right of flowage.

Taking the whole bill together, the Court are of opinion, that the principal right set out by the plaintiffs, is a franchise, an easement or incorporeal hereditament, that it is sufficiently set out and described as such, that the injury complained of is an injury to such incorporeal hereditament, by a disturbance of the plaintiffs, in the enjoyment of such franchise, that the remedy for such an injury at law, would be an action on the case for a disturbance, and not an action of trespass *quare clausum*, that such an injury is in strict legal consideration a nuisance, and is therefore within the provisions of the statute giving the Court jurisdiction in equity, in all cases of nuisance. This opinion renders it unnecessary to consider the question, whether in any case, the words of the statute can be construed in a more enlarged sense, so as to include wrongs not regarded at law as nuisances, thereby using the term nuisance in a more generic or popular sense, and as equivalent to hurt or damage.

2. It has been contended that this is not a case within the statute, because the plaintiffs have a plain, adequate and complete remedy at law.

Where it appears upon the face of the bill, that a plaintiff has such remedy, it shows such a want of equity, as may be taken advantage of by general demurrer. But as this relief is given in all cases where there is not such remedy,

Boston
Water
Power Co.
v.
Boston and
Worcester
Rail-Road
Corp.

it must plainly appear upon the bill, before the jurisdiction can be considered as taken away upon this ground.

There appear to be several grounds upon which this bill for an injunction, so far as the rights of the parties appear upon the bill, may be sustained.

It has often been held, that where a party claims a franchise under a statute, and is in the possession and enjoyment of such franchise, equity will interpose to protect and secure the enjoyment of such franchise, because it affords the only plain and adequate remedy. *Newburgh Turnpike Co.* v. *Miller*, 5 Johns. Ch. R. 101. In the present case, certain rights and franchises were granted to the plaintiffs, by the legislature, upon the ground that the enjoyment and exercise of them would not only be a benefit to the persons incorporated, but would also contribute to the public benefit.

Another ground is, where the party complained against professes to act by public authority, to enter upon, and to a certain extent to use the land of third persons, and exceeds his authority, it is held to be a peculiarly proper case for the interposition of a court of equity. *Agar* v. *The Regent's Canal Co.*, Cooper's Eq. Rep. 77 ; *Shand* v. *Henderson*, 2 Dow's R. 519.

In this case both these conditions concur ; the plaintiffs claim a statute franchise of which they are in possession, and the defendants claim to act under a legislative provision vesting in them the power to do what they have done.

It is also another ground for the interposition of a court of equity, that what the defendants propose to do, and claim a right to do, is the erection of a work, which is in its nature permanent and perpetual. It is not like the case of a single or temporary disturbance, the injury arising from which can be measured and estimated and compensated in damages in a single suit ; the plaintiffs would be compelled to bring successive suits, from time to time. This is more especially a ground of interference, where the party complained against professes to exercise a public authority, and where the claim is to appropriate the property or franchises of the complainant, to a purpose claimed to be public, and where the plaintiff denies and contests the right of the

Boston
Water
Power Co.
v.
Boston and
Worcester
Rail-Road
Corp.

defendants to exercise such power. *Gardner* v. *Newburgh*, 2 Johns. Ch. R. 162 ; *Belknap* v. *Belknap*, 2 Johns. Ch. R. 473.

Without going at large into the authorities, the Court are of opinion, that this is a case where the rights of the plaintiffs, being fixed and settled by the statutes, where both parties are corporations, claiming certain rights, but claiming them as granted by the public, and to be exercised and carried into effect for the use and benefit of the public, it is fit, that the plaintiffs, instead of being left to a suit at law, in which relief in damages only could be obtained, should be entitled to the more adequate and complete remedy furnished by a court of equity, where the relative rights of the parties with their just limits and qualifications, may be declared and fixed, and under which the parties may enjoy specifically the very rights, immunities and franchises which the public intended to grant to them respectively with an ultimate view to the public benefit and accommodation. A suit at law would only enable the plaintiff corporation to recover and distribute a sum of money by way of damages for the violation of those rights, among the members of that corporation, as individuals, but would not empower them to accomplish the specific public objects, for attaining which these franchises were conferred on them.

If it be contended in answer to this suggestion, that by a recent statute, the court have power, where judgment is rendered in an action on the case for a nuisance, on motion, to award and issue a warrant to the sheriff or his deputy to abate and remove the nuisance at the expense of the defendant, in like manner as common nuisances are abated and removed, (*St.* 1828, *c.* 137, § 6,) we think it may be well replied, that this statute power is not equally adequate and beneficial. Under the statute, the power is to prostrate and remove only, whereas the decree of a court of equity may be modified and adapted to the case with a due regard to the rights of both parties, securing the rights of the one, and diminishing as little as possible the advantages of the other. It may therefore be more beneficial for the defendants, as well as for the plaintiffs.

Boston
Water
Power Co.
v.
Boston and
Worcester
Rail-Road
Corp.

It is hardly necessary to add, that this view is taken on a demurrer to the plaintiffs' bill, which admits, for the purpose of presenting the question of jurisdiction, that the plaintiffs have all the rights which they claim, and that all the grounds upon which the defendants claim to justify their proceedings, as warranted by the acts of the legislature, are untenable. We have not taken into consideration, and, for obvious reasons, upon this preliminary proceeding, could not consider the merits of the respective claims of the parties.

3. As to the last point, that the demurrer will be sustained on the ground that the lessees are not made parties to the bill, we think it is apparent that this affords no sufficient ground for a demurrer, unless it also appears that the persons indicated are necessary parties. It is not sufficient, that it may turn out upon further inquiry, that they have an interest. But we think this does not appear upon the bill. The gravamen is, that the acts complained of tend to diminish and reduce the amount of the water power, which the plaintiffs are entitled to enjoy, and but for the works of the defendants, would enjoy, under their grants. But it does not appear that the power will thereby be reduced to so low an amount as to prevent the lessees from enjoying that which has been granted to them, under their respective leases.

The case of a lessee of land taken for public use, does not apply. A lease gives the lessee the enjoyment of the estate, for a term of time ; and this is necessarily impaired and taken away for such term, by appropriating the land to public use. Such lessee has a real interest, a proprietary title and ownership, for the time being, of the estate taken. But we are to understand from the statement in this bill, and the nature of the right granted, that it is the use of a certain quantity of water, out of a much larger quantity, from which it is taken, the residue of which remains to the lessors. As between lessors and lessees, therefore, the lessees are to be first fully served to the extent of the quantity granted, whether any thing remains to the lessors or not. The substance of the complaint is, not the destruction but the diminution of the power. But it may be diminished, so as to

Boston
Water
Power Co.
v.
Boston and
Worcester
Rail-Road
Corp.

be greatly injurious to the plaintiffs, and yet there may be enough to satisfy the rights of the lessees, and if so, they have not necessarily an interest in the subject matter of the controversy. Should it appear in the further progress of the cause, that the lessees have an interest in the subject matter of the suit, there will then be time to make them parties. But at present, it not appearing that they are necessarily parties, the demurrer cannot be sustained on that ground.

*Demurrer overruled*