# Riefler & Sons, Appellant, *v.* The Wayne Storage Water Power Company.

*Deeds—Construction—Reservations and exceptions—Easements—Extinguishment—Corporate powers.*

1. The right to make use of the land of another for a precise and definite purpose, not inconsistent with a general right of property in the owner is in legal contemplation an easement or franchise and not a grant of the soil.

2. The distinction between a reservation and an exception is that a reservation is some new thing issuing out of what is granted; an ex-

ception is the withdrawal from the operation of the grant of some part of the thing itself. An exception applies only where the subject already exists.

3. The terms "reservation" and "exception" are often used interchangeably, and the technical meaning will give way to the manifest intent even though the technical term to the contrary be used.

4. A canal company, the powers of which were limited to the operation of a canal and railroad appurtenant thereto, in 1851 conveyed certain lands by three deeds each containing the following clause: "Excepting out of the premises aforesaid, and hereby expressly reserving to the said . . . . Canal Company, and their successors and assigns, the absolute and unqualified right to occupy so much of the land as they may consider necessary for a reservoir or reservoirs, . . . ., and to construct a dam or dams for such reservoir purposes and to overflow all the land that they may require for such purposes. Also reserving to the said party of the first part, their successors or assigns, the right at all times hereafter freely and without charge to . . . . take . . . . from the land or premises hereby conveyed, . . . . all the stones, . . . . or other material . . . . requisite or convenient for constructing, . . . . or maintaining the said reservoir . . . ., with the right also at any and all times forever of full ingress, egress and regress . . . ., through or from the lands hereby conveyed, . . . . as fully and as absolutely in regard to all the exceptions and reservations herein made as if this indenture had never been executed, . . . ." This title vested finally in the plaintiff. Subsequently, until 1898, the company used two natural ponds which were upon the land so conveyed as feeders or storage reservoirs for its canal, and at no time used them for any other purpose. In 1898 the canal was permanently abandoned. In 1903 the company executed and delivered to other parties a deed for a portion of the lands described in the former three deeds including the water of the two ponds, excepting and reserving "so much thereof as was conveyed . . . . by deed dated March 8, A. D. 1851. The interests conveyed by this deed since vested in the defendants a Storage Water Power Company, the powers of which comprise the storage . . . . of water for manufacturing and other purposes, and for the creation . . . . of water power therefrom." Plaintiff brought ejectment for the ponds. *Held*, the clause in question constituted a reservation of an easement of storing and taking water only as incidental to the maintenance of the grantor company's canal, under its charter, and when the canal was abandoned the easement was extinguished.

Argued, Feb. 21, 1911. Appeal, No. 277, Jan. T., 1911, by plaintiff, from judgment of C. P. Wayne Co., Oct. T., 1908, No. 158, in case of Reifler & Sons, Incorporated, v.

284 RIEFLER & SONS, Appellant, *v.* WAYNE S. W. P. CO.

The Wayne Storage Water Power Company. Before
FELL, C. J., MESTREZAT, POTTER, STEWART and MOSCH-
ZISKER, JJ. Reversed.

Ejectment for lands in Lebanon Township. Before
FULLER, J., specially presiding, without a jury.

The facts appear in the opinion of the Supreme Court.

*Error assigned* was in entering judgment for defendant.

*Homer Greene* and *Russell Duane*, of *Duane, Morris &
Heckscher*, with them *E. C. Mumford*, for appellant.—
The clause was in the nature of a reservation, and not an
exception: Kister v. Reeser, 98 Pa. 1; Moffitt v. Lytle,
165 Pa. 173; Sheffield Water Co. v. Elk Tanning Co.,
225 Pa. 614; Duross v. Singer, 224 Pa. 573.

The right created was an easement: Slegel v. Lauer, 148
Pa. 236; Big Mountain Imp. Co.'s App., 54 Pa. 361; Jessup
v. Loucks, 55 Pa. 350.

The canal company could use the easement only for
its corporate purpose: Citizens Elec. Co. v. Boom Co.,
227 Pa. 448; Thomas v. Railroad Co., 101 U. S. 71; Pitts-
burg & Lake Erie R. R. Co. v. Bruce, 102 Pa. 23.

*F. P. Kimble*, for appellee, cited: Whitaker v. Brown,
46 Pa. 197; Craig v. Wells, 11 N. Y. 315; Slegel v. Lauer,
148 Pa. 236; First Methodist Church of Columbia v. Old
Columbia Public Ground Co., 103 Pa. 608; Rankin Regu-
lar Baptist Church v. Edwards, 204 Pa. 216; Bombaugh v.
Miller, 82 Pa. 203; Butz v. Ihrie, 1 Rawle, 217.

OPINION BY Mr. JUSTICE POTTER, July 6, 1911:

On March 8, 1851, the corporation entitled, The Presi-
dent, Manager & Company of the Delaware & Hudson
Canal Company, conveyed by three separate deeds to
Russell F. Ford and Thomas H. R. Tracy three tracts of
land situated in Lebanon township, Wayne county, Pa.,
containing in all about 1,164 acres. Each deed contained

the following clause: "excepting out of the premises aforesaid, and hereby expressly reserving to the said President, Manager & Company of the Delaware & Hudson Canal Company, and their successors and assigns, the absolute and unqualified right to occupy so much of the land as they may consider necessary for a reservoir or reservoirs, or for any appendages to the same, or for repairing, improving, enlarging or maintaining the same, and to construct a dam or dams for such reservoir purposes and to overflow all the land that they may require for such purposes. Also reserving to the said party of the first part, their successors or assigns, the right at all times hereafter freely and without charge to have, take and use from the land or premises hereby conveyed to the parties of the second part, all the stones, earth, brush or other material of any kind whatsoever requisite or convenient for constructing, improving, altering, repairing, enlarging or maintaining the said reservoir and its appendages and the works incident to or connected therewith, with the right also at any and all times forever of full ingress, egress and regress to and for the said party of the first part, their successors or assigns, by themselves, their engineers, agents or workmen, with their beasts of draught or burden and implements of labor, any or every of them upon, through or from the lands hereby conveyed to the said parties of the second part, as fully and as absolutely in regard to all the exceptions and reservations herein made as if this indenture had never been executed, and without any obligation on the part of the said party of the first part, their successors or assigns, to erect or maintain any bridge or fence on the premises hereby conveyed." The title to the lands thus acquired by Lord and Tracy, is now vested in Riefler & Sons, Incorporated, the plaintiffs in this case.

Upon the premises conveyed as above stated in 1851, were, and still are, two bodies of water known as Upper Woods Pond, a natural body of water, containing about 80 acres, and Lower Woods Pond, also a natural body of

water, but raised considerably by a dam at its outlet, containing about 96 acres. From the year 1851 until 1898, the canal company, acting under the authority of the clause in the deeds above cited, used these ponds as feeders or storage reservoirs for its canal, and at no time used them for any other purpose. In the year 1898, the canal was abandoned, and has remained in a state of abandonment and decay until the present time.

On August 6, 1903, the Delaware & Hudson Company, being the corporation which was the grantor in the deeds above referred to (its name having been changed by the legislature of New York, where it had been incorporated), executed and delivered to Alonzo T. Searle and Levi F. Patterson, trustees, a deed for a portion of the lands described in the deeds of Lord and Tracy above mentioned, excepting and reserving "so much thereof as was conveyed by the party of the first part to Russell F. Lord and Thomas H. R. Tracy by deed dated 8th March, A. D. 1851." The interests thus conveyed to Searle and Patterson, trustees, have since become vested in The Wayne Storage Water Power Company, the defendant in this case. The powers of the Delaware & Hudson Canal Company were limited by its charter granted in New York, and by statute in Pennsylvania, to the operation of a canal and a railroad appurtenant thereto. The powers of the Wayne Storage Water Power Company comprise the "storage, transportation and furnishing of water for manufacturing and other purposes, and for the creation, establishing and furnishing, transmission and using of water power therefrom."

The present action in ejectment was brought to recover possession of the land covered by the two ponds above mentioned, upon the theory that the clause in the deeds to Lord and Tracy was in the nature of a reservation, and was not an exception, and that being a reservation, it created an easement for the purpose of storing water, which under the corporate powers of the canal company could only be used by it for the supply of the canal, and

when its use for that purpose ceased, the easement was extinguished, and the right to unqualified possession of the land became vested in the owner of the fee. The learned trial judge in the course of his decision said: "There can be no doubt that if the deed did create an easement, and if the easement was restricted to that particular corporate purpose, it has terminated, and plaintiff may recover in this action, the land upon which such easement was imposed."

The first question thus brought squarely before us for determination is whether the clause in the deeds under consideration constitutes a reservation or an exception. The trial judge held that it was an exception. The distinction between a reservation and an exception is thus stated in 2 Devlin on Deeds, sec. 979: "A reservation is some new thing issuing out of what is granted; an exception is a withdrawal from the operation of the grant of some part of the thing itself." In the recent case of Sheffield Water Co. v. Tanning Co., 225 Pa. 614, our Brother STEWART said (p. 619): "The essential characteristic of a reservation as distinguished from an exception is, that its subject is something that did not exist before but is created by and grows out of the transaction. An exception applies only where the subject already exists." In the opinion in that case it is further shown, that in the deed then under consideration, "nothing was excepted out of the general grant; the deed invested the grantee with the legal title to the whole of the premises described in the grant; it conveyed to the grantee every inch of land falling within the description, whether occupied by dam, reservoir, pipes, tannery or otherwise howsoever, subject only to the right of the grantors, their heirs and assigns, to do those things upon the premises which the grantors had expressly reserved the right to do."

This language seems to apply precisely to the terms of the present grant. The entire fee is conveyed by the deeds, and only certain rights are reserved to the grantors. The reservation is of "the absolute and unqualified right to occupy" so much of the land as may be necessary for reser-

voirs and dams, and "the right at all times hereafter freely and without charge to have, take and use from the land or premises hereby conveyed" stones, earth, brush or other material necessary for the construction and repair of these reservoirs, etc. No part of the thing granted is excepted from the effect of the grant, but a new right or interest in the grantors is created, which they retain. It is something which did not before exist apart from the ownership of the land. It is true that in the case at bar, the words "excepting" and "reserving" are both used, and this fact was regarded as significant by the trial judge. No special importance can, however, be attached to the use of both of these words, as they are frequently used together without careful discrimination as to whether an exception or a reservation is intended. This usage is noted in the text-books. Thus in 2 Devlin on Deeds, sec. 980, it is said: "The terms 'exception' and 'reservation' are often used indiscriminately, and sometimes in a deed what purports to be a reservation has the force of an exception." And again in 13 Cyc. L. & P. 674, it is said: "The terms 'reservation' and 'exception' are often used interchangeably, and the technical meaning will give way to the manifest intent, even though the technical term to the contrary be used." The point is discussed at considerable length in Whitaker v. Brown, 46 Pa. 197, and in Kister v. Reeser, 98 Pa. 1, where it is said that the terms "reservation" and "exception" "are often used in the same sense, the technical distinction being disregarded."

By reference to the deed, it appears that except for the purpose set forth in the clause of reservation, the right of the grantees to the land described, was not restricted. Upon the other hand, in so far as may have been considered necessary to serve the required end, there was reserved to the grantor, not merely the right to occupy specific parts of the land, but in so far as any physical limitations of the boundaries were concerned, the reservation was indefinite and uncertain.

Our examination of the clause satisfies us that the ef-

fect of the language was to create something new out of what was granted. That is, it created the right to maintain reservoirs upon the land conveyed, and to repair, improve and enlarge them, and to construct dams, and overflow all the land the grantor might require for that purpose, and to enter upon the land and take from it stone, earth, brush and other material requisite or convenient for construction or repair of the reservoirs. This right, as a thing separate and apart from the ownership of the land, was created by and grew out of the transaction between the parties to the deeds, and it did not exist before. The new right in this respect thus created by the transaction was from that time forth to be enjoyed apart from, and in no way dependent upon the ownership of the land. As it was not in existence prior to the making of the deeds, it could not be made the subject of an exception, which must always be of something in existence at the time, as part of the whole of the grant, from which it is excepted.

The facts in this transaction seem to correspond in every particular with the requirements of the legal definitions of a reservation, and to be lacking in the essentials which distinctly define an exception. We are therefore impelled to the conclusion that the clause in question constitutes a reservation. It imposed a servitude upon the property, by which the new owners were restrained from the full and unlimited use of the land, and were obliged to suffer the canal company to do certain things upon the property, which were it not for the burden imposed upon it, the owners would have had the sole right to do. The right to make use of the land of another for a precise and definite purpose, not inconsistent with a general right of property in the owner, is in legal contemplation an easement or franchise, and not a grant of the soil: Boston Water Power Co. v. B. & W. R. R. Corp., 33 Mass. 512. A general definition of an easement and description of its properties is compiled in 3 Farnham on Waters, sec. 808, as follows: "An easement is a right in the owner of one parcel of land by reason of such ownership to use the land of another

for a special purpose not inconsistent with a general property in the owner. Being an interest in land it must be created and transferred by deed by prescription which presupposes a grant, by an agreement for a conveyance which may be enforced in equity, or by a sale of property with reference to an existing convenience which entitled the grantee to its continued enjoyment. In order to establish an easement the dominant and servient estates must be owned by different persons. . . . This principle applies to drains, flowage rights, and all other uses to which one portion of a tract may be (subjected) in favor of another. The easement may be created by conveyance of the right when transferring property in favor of which it is to exist, or it may be reserved in favor of the grantor."

There is a class of rights which one may have in the land of another, without their being exercised in connection with other land, and which are known as easements in gross. In these cases there is no dominant tenement. But in easements proper, it is essential that there should be both a dominant and a servient estate; but it is not essential that they should be contiguous. For example, a pew in a church may be appurtenant to a house quite distant from the church: Jones on Easements, sec. 5. In Perrin v. Garfield, 37 Vt. 304, it was held that a dam located a mile away was appurtenant to a mill to which it supplied water. This case was cited in Cady v. Water Works Co., 134 N. Y. 118, where Follett, C. J., said (p. 121): "An easement may be created though the dominant and servient estates are not contiguous." In the latter case it was held that the right to receive water from a spring located in a village was appurtenant to a lot some distance from the lot upon which the spring was located. In the present case, the bed of the canal, or the canal property, was the dominant tenement. It was that to which the servitude was due, or for the benefit of which it existed, and for which it was constituted. The Delaware & Hudson Canal Company was confined in the use of this easement to the limits of its corporate purpose, as set forth in its charter. This would

confine the use of the easement, or the right to store and take water, to the needs of the canal; and if the canal was abandoned, then the purpose for which the easement in question was lawfully created, failed, and the easement was extinguished. "An easement is extinguished when the estate to which it is appurtenant ceases to exist:" Jones on Easements, sec. 843.

The parties here agree that in or about the year 1898, the Delaware & Hudson Canal Company ceased to operate the canal. The water was drawn off; locks, gates and equipment were dismantled, and this condition of general disuse and decay has prevailed to the present time. The court below found the facts in accordance with the agreement, and also found as a conclusion of law that the acts of the canal company constituted a legal abandonment of its canal. It had no right under its charter to use the water from the reservoirs for any other purpose. An authority very much to the point is National Guaranteed Manure Co. v. Donald, 4 H. & N. 8. In that case a canal company had been converted by act of Parliament into a railway company, and the canal itself was abandoned. The canal company owned certain water privileges which the railway company undertook to dispose of by lease. It was held that the railway took no rights in the water privileges. POLLOCK, C. B., said (p. 16): "The railway company arose out of a previously existing canal company. The canal company had a right to take water for the canal; but the canal had ceased to exist; therefore the right of the canal company had also ceased. I agree with my Brother MARTIN that if an easement for a particular purpose is granted, when that purpose no longer exists, there is an end to the easement." He then referred to Rochdale Canal Co. v. Radcliffe, 18 Q. B. 287, and said: "That case is a direct authority that a parliamentary corporation is a corporation for those purposes only for which it has been established by parliament, and has no existence for any other purpose, and that whatever is done beyond the scope of such purpose is ultra vires and void. . . .

This easement was incidental to the canal, and when the canal ceased to exist, the easement altogether ceased." This reasoning commends itself to us, and we think it applies closely to the case now before us, and leads clearly to the conclusion that the Delaware & Hudson Canal Company reserved the easement of storing and taking water only as incidental to the maintenance of its canal; and when that was abandoned, the easement came to an end with it. "Any act of the dominant owner that is inconsistent with his further enjoyment of the right is an abandonment of it:" Jones on Easements, sec. 852.

The principle is identical with that set forth in Jessup v. Loucks, 55 Pa. 350. There a canal company abandoned its works and ceased to use its easements. But before doing so, it undertook to sell the right to use its surplus water, and its grantee claimed the right to reconstruct a dam. It was held that the easement had been lost and the company had no right to make such a grant. Mr. Justice THOMPSON said (p. 362): "The grant itself being of an incident connected with or arising out of the principal object in granting the charter to the company, must necessarily expire with the principal, and cease when that ceases. In the nature of things, there could be no fee-simple estate in it. The grant might be perpetual if the works continued to be so, but its perpetuity would depend upon that. . . . Such a grant, in its enjoyment, is as permanent only as the creation of which it is an incident, and necessarily as unstable. Like the natural phenomenon of the shadow cast by a substance, it vanishes when the substance disappears."

It will be remembered that the right of the Delaware & Hudson Canal Company to alienate its lands is not at all in question. It did that in the conveyance to Lord and Tracy. But in so doing, it created a reservation which imposed a burden of servitude upon the lands in the hands of its grantees, the new owners of the fee. We are dealing merely with the character of this reservation. Our study of the question has satisfied us that the reservation created

a right in the grantor to use the land for a special purpose not inconsistent with the general property right in the owners. That this purpose was the storage and supply of water for the maintenance of the canal of the grantor, under the authority of its charter, and was incidental to the maintenance of the canal, and when that was abandoned, the purpose for which the right or easement was created ceased to exist, and the easement was extinguished. The owners of the property in fee were then relieved of the servitude. It follows that the defendant and its predecessors in title have been wrongfully in possession of the property described in the writ, since the extinguishment of the easement.

The judgment of the court below is reversed, and it is now ordered that judgment be entered for the plaintiff, for the premises described in the writ.