# McClure et al. *v.* Monongahela Southern Land Company et al., Appellants.

*Equity—Jurisdiction—Removal of surface support—Injunction —Permanent injury.*

1. Equity has jurisdiction to restrain a continuing trespass upon land which contemplates the removal of the surface support and threatens the immediate and serious settling and the rendering of the property useless for building and farm purposes.

*Easement—Extinguishment—United title to dominant and servient estate in same person.*

2. An easement may be extinguished by a unity in the absolute title to, and possession of, the dominant and servient estates in the same person.

3. One who acquires title to land subject to a purchase-money mortgage and to certain mining rights and who subsequently secures quitclaim deeds for such mining rights for the protection of the surface, through litigation based upon the assertion that such rights had been abandoned, cannot after the foreclosure of the mortgage assert a revival of the mining easement, and begin mining

operations thereunder, inasmuch as he would be committing the very wrong which he sought by his own action to prevent.

Submitted Oct. 17, 1918.  Appeal, No. 90, Oct. T., 1918, by defendants, from decree of C. P. Allegheny Co., Jan. T., 1917, No. 2011, on bill in equity enjoining mining operations in the case of Joseph H. McClure and William McElwee, Jr., Executors of the Last Will and Testament of Richard McClure, deceased, and Joseph H. McClure v. Monongahela Southern Land Co. et al.  Before Brown, C. J., Frazer, Walling, Simpson and Fox, JJ.  Affirmed.

Bill in equity to enjoin mining operations.

Reid, J., filed the following opinion:

The bill of complaint seeks to restrain defendants from entering upon, mining or removing coal from a certain tract of seventy-nine acres of land in Mifflin Township, Allegheny County, and from maintaining a coal tipple, coal bins, etc., on the property of complainants and a certain public street in a plan of lots laid out on complainants' land.

The bill also prays for the assessment of damages sustained by plaintiffs through the unlawful removal of coal from the property of plaintiffs and for a decree declaring the said land company trustee for plaintiffs of the legal title, if any, acquired by it through a certain quitclaim deed from the Peoples Bank of McKeesport and Mary J. Kearney......

The real question to be determined is, "whether the defendants have the right to mine and remove whatever bituminous coal may yet remain under the seventy-nine acre tract above referred to, which was covered by the deed from Richard McClure to William Stone, bearing date January 21, 1869."

By the deed above stated Richard McClure, who was the owner in fee of a tract of land containing 222 acres, more or less, in Mifflin Township, conveyed to said Wil-

liam Stone all the bituminous coal underlying a portion of the said land containing 79 acres, 1 rood, with all the rights and privileges necessary for working out and mining successfully the coal under said tract.

The limits of the larger tract and the boundaries showing crop lines of the 79-acre tract lying within it are correctly shown in a draft prepared by J. H. Milholland and in evidence as Exhibit 4.

The grantee, Stone, thereupon began mining and removing the coal under the 79-acre tract and continued to do so until he had removed all the mineable coal which he considered could be properly and safely removed from the mine.

When the work was about being finished, Stone's miners operated from the rear of the mine towards the front or mouth, removing such remaining part of the coal as they considered could be safely removed, but leaving some coal unmined within about 200 yards of the pit-mouth, apparently because, being in a so-called "swamp," it could not be mined without endangering the surface.

Thereupon the mine was dismantled inside and outside, the whole plant being removed after the operations last above described, the tipple, blacksmith shop, and similar structures entirely disappearing, and the pit-mouth being closed by the natural processes of slipping earth and falling banks, leaving but slight evidence of its site and purpose.

This final work and seeming abandonment was done in the year 1883, and thereafter no attempt was ever made to mine or remove any coal from under the 79 acres until the attempt by the defendants, which is now sought to be restrained—a period of 33 years.

In 1902, nineteen years after the cessation of such mining operations, Peter Sandomire bought the entire tract from Richard McClure, the vendor reserving and excepting therefrom the 79 acres of coal previously sold to William Stone and the mining rights incident thereto, and one other small tract which had been similarly dis-

posed of. Sandomire gave a purchase-money mortgage and bond for the balance of purchase money amounting to $38,850, the mortgage, however, not reserving or excepting the coal underlying the 79 acres of the mining rights appurtenant thereto.

The mortgage being subsequently foreclosed, resulted in the title of Sandomire and his vendees being vested in the executors of Richard McClure and Joseph H. McClure. Sandomire, the day following his purchase, conveyed the property to the Prudential Trust Company, subject to his purchase-money mortgage, and within less than three months thereafter the Prudential Trust Company conveyed it to the Monongahela Southern Land Company, which had been organized to take it over,—also subject to the said purchase-money mortgage, which it assumed and agreed to pay.

The Monongahela Southern Land Company is one of the defendants in this case, and it is through its claim to the Stone rights, if any, that it induced the other defendants to attempt to again begin mining operations on the land in question.

In 1907 the Monongahela Southern Land Company, being in possession of the 222-acre tract, laid out the greater portion of the tract in building lots and also laid out and dedicated in connection with them ten public streets or avenues, including Duquesne avenue and Third street, at the intersection of which, and in the dedicated highway, the defendants have undertaken to place their tipple, coal-bins, etc., and to begin the mining operations sought to be now enjoined.

The site of said operations is outside the limits of the 79-acre tract and on a portion of the whole tract remote from the original mine opening, abandoned as stated. The distance across to the old opening would seem to be not less than 1,400 feet, and the distance to be traversed by the new entry through crop, coal and property of the plaintiffs entirely outside of the lines of the 79-acre tract, to reach the body of coal in the 79-acre tract, al-

leged to be yet in place, would be approximately 1,000 feet.

The opening through which the defendants propose to operate has been made at the outlet of an old watercourse, or mine drain, which had been partially clogged or fallen in for many years, but which has been cleaned out and widened and from which the entry has been driven that runs under Third avenue.

Defendants claim title through a quitclaim deed from the Peoples Bank of McKeesport and Mary J. Kearney, by which the rights of these vendors to the Stone mining rights were relinquished to the Monongahela Southern Land Company. However, the deed was made pursuant to the settlement of a bill in equity filed by the Monongahela Southern Land Company against the lessees or licensees of the grantors therein to restrain mining of coal on the smaller of the Stone tracts, upon the ground that the rights of Stone had been extinguished many years before by the abandonment by reason of exhaustion of the property in question.

The bill specifically avers the nonexistence of coal under the Stone property, the abandonment of the premises and the danger which would result to the property of the complainants and their vendees of building lots, if mining were to be permitted to continue.

Defendants in that bill paid the Monongahela Southern Land Company $600 for coal unlawfully removed and quitclaimed all their rights, as above stated, to end the litigation, and apparently to prevent further injuries to the surface and to the vendees of lots and the land company's remaining interest in the portion of the plan not yet disposed of.

The interest of the land company having been divested by the sheriff's sale in the foreclosure proceedings already mentioned, it now seeks to make profit regardless of the rights of its vendees of building lots, of the public to whose use it dedicated the streets and avenues in its

plan, and of the rights of Richard McClure's executors or vendees......

### DISCUSSION.

Two prominent and controlling facts are apparent in this case,—one is the abandonment for more than thirty-three years by William Stone or his successors in title of any purpose to further operate for coal under the 79-acre tract; the other is the uniting in the Monongahela Southern Land Company, by the quitclaim deed from the Peoples Bank of McKeesport and Mrs. Kearney, of the dominant and servient estates whereby the easement granted William Stone with the mining rights incident thereto were thereby extinguished.

The other facts found simply serve to interpret and render more determined the central facts above stated. Doubtless, a fee in the coal was granted to William Stone and the easement to remove it would continue perpetually, if need be, to secure his rights,—but having exhausted the coal and not requiring any rights of way to pass through the McClure lands to and from other mines operated by him (there being none such), it cannot be contended that he might not abandon the premises if he chose,—and he undoubtedly made the election, satisfied that all of the coal of value to him had been removed.

Does it now rest with the owner of the skeleton of that once dominant estate (the mere title, minus any valid and subsisting rights) to recall it to life and effectiveness and set it up against the servient estate? Should it be permitted, as against those who, by reason of the default of the Monongahela Southern Land Company, in whose hands both estates united, were forced to acquire the title to save themselves from the result of that very default?

The mere statement of the proposition presents the inequity of such a position.

It is urged that equity is without jurisdiction to restrain the Monongahela Southern Land Company and its agents from beginning de novo to mine in and under the very property their predecessor in title disclaimed, and which that company itself protested had been exhausted and abandoned, because plaintiffs have not by an action at law first established a paramount title, the bill before us being styled by defendants' counsel an ejectment bill, to be dismissed for that reason.

The fact that the defendants are not in possession, and never were in possession, of the Stone mining rights (they being, by the land company's own prior bill, nonexistent), and the fact that an attempt is now being made by the assertion of such abandoned rights, to cast a cloud upon the plaintiffs' title, is, in our judgment, ample ground for the maintenance of this bill as the only means whereby the rights of the plaintiffs, of the land company's own vendees of town lots, and of owners of the buildings placed on them, can be asserted and protected.

That there may be an extinguishment of such an easement by an actual abandonment, continuing for upwards of thirty-three years, would seem to be beyond question.

Washburn in his work on Easements and Servitudes, says, chapter 4: "As easement may be acquired by actual or constructive grant in various forms......so they may be surrendered, lost or extinguished by actual or constructive release. Among these would be a release in terms by deed by the owner of the dominant to the owner of the servient estate": Washburn on Easements, etc., 3d Ed., p. 605.

The case of Sorg v. Frederick (Supreme Ct., January 6, 1917, 255 Pa. 617), opinion by FRAZER, J., where there was a suspension of mining operations for fifteen years, and which was held not to terminate the grant, is readily distinguishable from the one before us. There, there was a discontinuance of mining merely. Here, we have positive proof of working to practical exhaustion and deliber-

ate and undoubted abandonment and actual removal of all equipment and means for carrying on further operations.

Aside from such abandonment, we have the extinguishment of the easement by the uniting of the dominant and servient estate, as already indicated.

That such merger extinguishes the easement is ruled in Zerbey v. Allan, 215 Pa. 383, where, at page 387, Mr. Justice POTTER, in the opinion of the court, quotes Washburn on Easements, etc. (4th Ed. *518), thus: "Where there is a union of an absolute title to and possession of the dominant and servient estates in the same person, it operates to extinguish any such easement absolutely and forever for the single reason that no man can have an easement in his own land."

The separation in the ownership of these estates by the sheriff's sale which vested the title to the 222 acres in the plaintiffs and left the Monongahela Southern Land Company as the depository of a barren and discredited claim to the Stone easement, did not revive the easement previously extinguished.

Such revival is permitted only in cases where it is required by the nature of the estate, and where in the interest of honest owners it should be preserved to effect a valid and legitimate purpose. The exception obtains only where there is a strong equity, and circumstances giving ground for the clear inference that the parties intended to preserve the easement: Kieffer v. Imhoff, 26 Pa. 438; McCarty v. Kitchenman, 47 Pa. 239; Philadelphia & Reading R. R. Co. v. Philadelphia, 47 Pa. 325, and Com. v. Burford, 225 Pa. 93.

To permit the Monongahela Southern Land Company to maintain the easement as against the plaintiffs would be, under the facts we have found, most inequitable. The fact that the quitclaim deed was procured by the land company for the protection of the surface of its plan of lots, and that the litigation resulting in its acquisition of the title to the Stone easements was based upon its own

assertion of the abandonment, sufficiently indicates its intention to finally extinguish any further claim on the part of any one to such easement. Such intention being evident, it cannot now be permitted to commit the very wrong which it sought by its own bill in equity to prevent.

We, therefore, append the following conclusions of law:

### CONCLUSIONS OF LAW.

1. The rights claimed by defendants in this case are based upon the deed from Richard McClure to William Stone bearing date January 21, 1869.

2. The rights granted by Richard McClure to William Stone by said deed of January 21, 1869, have been extinguished by abandonment continuing for a period of upwards of thirty-three years.

3. The defendants have erected and are maintaining the coal mining plant involved in this case in violation of the rights of the plaintiffs.

4. The injunction heretofore granted should be made permanent and the costs of this proceeding paid by the defendants.

Let a decree be drawn in accordance herewith.

Defendants appealed.

*Errors assigned* were certain findings of fact and conclusions of law, quoting them, and the decree of the court.

*Leonard K. Guiler,* for appellants.—Equity had no jurisdiction: Huss v. Jacobs, 210 Pa. 145; North Shore R. R. Co. v. P., Ft. W. & Chicago Ry. Co., 193 Pa. 641; Williams v. Fowler, 201 Pa. 336.

*W. G. Powell* and *Samuel S. Mehard,* for appellees.—Equity has jurisdiction: Bussier v. Weekey, 4 Pa. Superior Ct. 69; Mason's App., 70 Pa. 26; Stewart's App.,

56 Pa. 413; Allison's App., 77 Pa. 221; Bitting's App., 105 Pa. 517; Ferguson's App., 117 Pa. 426; Walters v. McElroy, 151 Pa. 549.

PER CURIAM, January 4, 1919:

This appeal is dismissed and the decree affirmed, at appellants' costs, on the discussion by the learned chancellor below of the facts found and his four legal conclusions which followed them.