Eagan, Appellant, *v.* Nagle.

Argued May 25, 1954. Before STERN, C. J., STEARNE, JONES, CHIDSEY and MUSMANNO, JJ.

*Maurice J. Coughlin,* for appellants.

*William W. Knox,* with him *Enoch C. Filer,* for appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, June 28, 1954:

Plaintiffs' appeal is from a decree of the court below dismissing their bill in equity in which they sought to enjoin defendants from preventing their use of an alleged right of way over defendants' properties. Defendants denied the existence of any such easement.

In 1923, William Irwin Arbuckle, who owned 18 acres of land in Mill creek Township, Erie County, deeded to John H. Russell the westernmost part of the tract extending some 600 feet from north to south and 200 feet from east to west. This conveyance contained no express grant of any right of way across Arbuckle's remaining property to the east. Russell and wife conveyed this property in 1940 to George F. Hall and wife, who, in turn, deeded it in 1948 to James D. Eagan and wife, the present plaintiffs. While, at the time of the Arbuckle deed to Russell, or perhaps somewhat later, a roadway extended eastwardly across Arbuckle's remaining land from a point about 190 feet north of the south line of the property conveyed to Russell, plaintiffs claim that Russell acquired an easement over that road by implication is without justification. Even if the road did then exist on the ground there is nothing in the record to indicate how long it had been there, whether it had been used for the benefit of the land conveyed to Russell, and whether it was

apparently intended to be of a permanent nature. Nor did it constitute a way of necessity for ingress and egress because the Russell property opened at its southern end onto Ardmore Avenue, a public highway.

In 1925 and 1926 Arbuckle conveyed to Samuel W. Landis, parcels of land extending from north to south along the entire easterly line of the Russell property and for a distance of 100 feet from east to west. These conveyances for the first time referred to the road here in controversy as 40 feet in width, and granted to Landis a right of way eastwardly over Arbuckle's remaining property to Wayne Avenue, a public street. The Landis tract was subsequently conveyed by him to William W. Woodbridge and by the latter and wife to W. Jacques Schuler and wife, who are two of the present defendants.

In 1927 Arbuckle conveyed all the rest of his property to Phoebe A. Russell, and she, with her husband, John H. Russell, immediately thereupon conveyed to defendant Theodore M. Nagle—with a later deed also in 1937—a tract extending from north to south along the easterly line of the Landis property for a width from east to west of 200 feet, which conveyance included the fee simple title to the 40 foot right of way on the property.

As a result of these various conveyances the situation on October 15, 1937, was that John H. Russell owned a strip of land 200 feet in width on the westerly part of the original Arbuckle tract, Woodbridge (who had acquired the Landis property) owned a strip 100 feet in width immediately to the east of the Russell property, Nagle owned a strip 200 feet in width immediately to the east of the Woodbridge property, and Phoebe A. Russell owned the land adjoining Nagle's property on the east. Extending eastwardly from a point on the easterly line of the John H. Russell prop-

erty, the 40 foot roadway, designated in the record as Montrose Avenue, cut through the Woodbridge, Nagle, and Phoebe A. Russell properties, turned in a southerly direction along a private road known as Chelsea Avenue, and terminated in a 30 foot private road called Edgewood Avenue which led eastwardly to Wayne Avenue.

On October 15, 1937, an agreement in writing was entered into by Phoebe A. Russell and her husband, John H. Russell, Theodore M. Nagle and wife, and William W. Woodbridge and wife, in which it was agreed that the roadway known as Montrose Avenue should be closed, and that the Nagles and the Woodbridges should hold their lands free and clear of any right of way or easement theretofore possessed by any of the parties thereto; the Russells granted to the Woodbridges all their right, title and interest in and to the roadway. As a result of this agreement, therefore, it is clear that even if, contrary to what has previously been stated, the John H. Russell property ever did have any easement or right of way by implication or otherwise over Montrose Avenue, the Russells surrendered all right thereto in and by this agreement.

On October 9, 1939, these same parties entered into another agreement in writing under and by virtue of which plaintiffs make their present claim to a right of way over Montrose Avenue. After referring to the "streets being known as Montrose, Chelsea and Edgewood Avenue," as more particularly described and identified on an attached map, the agreement went on to provide that "the parties hereto do hereby dedicate said streets or roads as shown upon the accompanying map, to the use of the owners of the real estate whose lands abut thereon and their heirs and assigns, and the said parties hereto do hereby covenant and agree to and with each other that said roads or streets shown

upon the accompanying map, shall remain open for-
ever as private streets and roadways, for the use of said
owners of real estate, their heirs and assigns, for the
purpose of ingress and egress to and from their respec-
tive properties, and also for the purpose of accom-
modating public utility service, . . . said streets and
roads being hereby irrevocably dedicated for the above
purposes, but not for public use or travel."

Defendants contend, and the court below held, that
this agreement conferred no right upon the John H.
Russell property to the use of Montrose Avenue. De-
fendants produced testimony to the effect that a meas-
urement marked on the map indicated that Montrose
Avenue was opened by the agreement only for a dis-
tance from Wayne Avenue on the east to a point some
7 feet short of the east line of the John H. Russell
property, thus showing that it was not intended that
the road should afford access to that property. De-
fendants further contend that the Russells were par-
ties to the agreement, not on behalf of the John H.
Russell property on the west, but on behalf of the
Phoebe A. Russell property on the east. Plaintiffs
countered these contentions by insisting that the
measurement relied on by defendants was not suffi-
ciently definite or accurate to be of any controlling
import and that Phoebe A. Russell would not have had
any interest in the opening of Montrose Avenue to the
west of her property. In view, however, of our con-
clusions in regard to another feature of the case here-
inafter referred to it is unnecessary to discuss these
rival contentions or the testimony upon which they
are based.

In our opinion the agreement of October 9, 1939,
is not entirely clear in respect to the issue here in ques-
tion, namely, whether the opening of Montrose Avenue
was intended to be partly for the benefit of the John

H. Russell property and not merely to benefit the properties of the other parties. The agreement states that the parties dedicated the streets or roads shown on the accompanying map "to the use of the owners of the real estate whose lands *abut* thereon." Did the John H. Russell property "abut" on Montrose Avenue within the intendment of the agreement in that it did not adjoin the road along the side but only at its 40 foot-wide dead-end? The authorities are apparently divided as to whether land in such a position is to be regarded as an abutting property. As examples on the one side of the question reference may be made to *Messinger v. City of Cincinnati,* 36 Ohio App. 337, 173 N.E. 260, and *Johnson v. Town of Watertown,* 131 Conn. 84, 38 A. 2d 1, which adopted the view that any property that borders on, or touches a road or street at any point is an abutting property. Contra are such cases as *Friscoville Realty Co. v. Police Jury of Parish of St. Bernard,* 127 La. 318, 53 So. 578; *Kingshighway Supply Co. v. Banner Iron Works,* 266 Mo. 138, 181 S.W. 30; and *Campbell v. City of Glendale,* Mo. App. , 211 S.W. 2d 519. But nearly all these decisions deal with the meaning to be ascribed to the term "abut" as employed in various statutes, and therefore offer little aid in the interpretation of that term in the agreement here in question. For the purpose of such interpretation we turn to a consideration of an important fact established by the testimony.

It appears that when Hall became the owner of the John H. Russell property in 1940, just six months after the agreement of October 9, 1939, he placed along the east line of the property a four-foot-high steel wire fence. That this fence extended across the 40 foot dead-end of Montrose Avenue is denied by plaintiffs, but it is certain that Hall did at least construct at that point a wire gate which was not on hinges but

was wired firmly to two posts and therefore could not be swung. Hall also piled there about half a railroad car of used bricks, while a heavy growth of trees, together with dense shrubbery of a height of about 10 feet, added to the barricade thus established. The result of these obstructions was that no vehicle could possibly pass into or from the property at that point, and this situation continued for nearly eleven years until the summer of 1951 when, immediately before filing their present bill in equity, plaintiffs removed the fence and gate, hauled away the bricks, and cut down the trees, the shrubbery and the undergrowth.

What, then, was the significance of this closing off of the property at the end of Montrose Avenue so that not even pedestrians could enter or emerge at that point? In the first place, it must be accepted as indicating Hall's understanding of the ambiguous agreement of October 9, 1939, only a few months after that agreement was executed. Had Hall believed that by that agreement his property was acquiring a right of way over Montrose Avenue he certainly would not have made passage to and from the roadway impossible. Thus the predecessor in title of plaintiffs, by whose actions in relation to the property they are bound, placed his own interpretation upon the agreement upon which plaintiffs now rely. But, in the second place, even if that agreement were to be construed as granting the John H. Russell property an easement, Hall's conduct amounted to an abandonment of any such right. While mere nonuser will not constitute an abandonment of an easement established by deed, the law is clear that, if the owner of the easement by his own affirmative act renders its use impossible or obstructs it in a manner inconsistent with its further enjoyment, the easement will be deemed to have been abandoned. It is true that whether a particular act amounts to an abandon-

ment is, generally speaking, a question of intention, and here plaintiffs point to the fact that in the deed from the Halls to plaintiffs in 1948 there was granted all the "right, title and interest" of the grantors "in and to the streets and roads and rights and privileges more specifically set forth in the agreement . . . dated October 9, 1939, . . . ."[1] It is claimed that this deed showed that Hall had not intended to abandon the right of way. Apart from the fact, however, that the grant in question is couched merely in general terms covering all the streets and roads, it purported to give only whatever the grantors might then own. Incidentally it may be noted that in the deed from John H. Russell and Phoebe A. Russell to Phoebe A. Russell dated November 8, 1939, just one month after the agreement of October 9, 1939, there was no mention whatever of any rights in Montrose Avenue. In our opinion, even if any easement did exist in favor of plaintiffs' property by virtue of the agreement of October 9, 1939, it was abandoned by reason of the construction and maintenance for eleven years of the barricade placed by Hall across the end of Montrose Avenue, and accordingly we conclude that defendants were within their rights in placing a chain across Montrose Avenue and parking automobiles there in such a way as to prevent plaintiffs' use of the road. Therefore the court below properly dismissed plaintiffs' bill.

Decree affirmed at the cost of appellants.

---

[1] This followed the same language contained in the deed from the Russells to the Halls in 1940.