## Hatcher *v.* Chesner, Appellant.

Argued April 25, 1966. Before Bell, C. J., Mus-
manno, Jones, Cohen, Eagen and O'Brien, JJ.

reargument refused July 27, 1966.

*David Freeman,* for appellant.

*C. David Krewson,* with him *Stuckert, Yates and
Krewson,* for appellee.

Opinion by Mr. Justice Eagen, June 24, 1966:

This is an appeal from a final decree in equity en-
joining the defendant from obstructing a right of way
over his land.

The facts supported by the record and the chancel-
lor's findings may be summarized as follows:

The plaintiff and the defendant are owners of
bordering pieces of improved land. In 1894, the then

common owner of both properties created by deed a perpetual ten foot right of way over the land, now owned by the defendant, for the benefit of the owners and occupiers of the land, now owned by the plaintiff.

The plaintiff acquired title to his land on March 22, 1961; the defendant title to his land on July 31, 1957. Both the deeds of the plaintiff and the defendant and, in fact, all deeds in the chain of title since 1894 have unequivocally stated that title was subject to the reservation and the right of way.

Both pieces of land front on the same street and extend back therefrom a distance of 140 feet. On defendant's land, along the line common to that of plaintiff's there exists a continuous row of out buildings. At one point where the right of way should exist, there is a small frame shed or garage 18 feet long with double doors, approximately 9 feet in width, on both ends. On one end, these doors, when opened, extend out on plaintiff's land. For the right of way to be usable, the double doors on both ends of the garage would necessarily have to be opened and the right of way would then extend through the garage for a distance of 18 feet.

The right of way has not been used since at least 1932. Also, a tree has been permitted to grow on plaintiff's property for at least 35 years in such close proximity to the double doors of the garage, which open on his property, as to preclude their use. A board has also been nailed across both doors on plaintiff's side which completely bars their use.

The defendant contends here, as he did below, that under the facts the plaintiff has lost the right to use of the easement by nonuse, abandonment and adverse possession.

Mere nonuse, no matter how long extended, will not result in extinguishment of an easement created by

deed: *Baptist Ch. In The Great Val. v. Urquhart,* 406 Pa. 620, 178 A. 2d 583 (1962).

The problems raised by the defenses of abandonment and adverse possession are so interrelated that they must be considered together.

The Restatement of Property, §504 (1944), recognizes that an easement may be lost by abandonment. It states "an easement may be extinguished by an intentional relinquishment thereof indicated by conduct respecting the use authorized thereby." The comments to this section make it clear that failure to use the easement is a fact from which an inference of abandonment can be drawn and found to exist. A number of states adhere to this view. See, *Witt v. Poole,* 182 S.C. 110, 188 S.E. 496 (1936), and *Roby v. New York Cent. & H. R. R. Co.,* 142 N.Y. 176, 36 N.E. 1053 (1894). The theory behind these decisions apparently is that abandonment of an easement can be recognized because there is no void of ownership. The servient tenement merely succeeds to the interest which is abandoned. Such, of course, would not be the case if abandonment were recognized in a fee.

Pennsylvania, however, has always been reluctant to accept this theory. Instead, where an easement is created by deed, Pennsylvania has required not only intent to abandon by the dominant tenement, but adverse possession by the servient tenement as well: *Richmond v. Bennett,* 205 Pa. 470, 55 A. 17 (1903).[1] Thus the Pennsylvania courts look not only to the actions and intentions of the dominant tenement with which the Restatement limits its consideration, but also to the *intentions and actions* of the servient tenement as well. The rationale behind the Pennsylvania rule was stated

---

[1] The Pennsylvania view was reaffirmed in its entirety in *Grucinski v. Tetlak,* 173 Pa. Superior Ct. 158, 96 A. 2d 175 (1953), which curiously enough cited the Restatement of Property with approval at the same time.

in *Lindeman v. Lindsey*, 69 Pa. 93, 100 (1871), wherein this Court said: "A man ought not to be obliged unless he requires it, actually to use a right or privilege secured to him by deed, nor to resort to legal proceedings unless his title is denied, and he is actually ousted, disseised, obstructed or prevented by some wrongdoer from an enjoyment of it when he requires and demands such enjoyment." It is clear from this and later cases that our courts equate ownership of an easement with ownership of a fee for these purposes. See, *Weaver v. Getz*, 16 Pa. Superior Ct. 418 (1901). (But see *McClure v. Monongahela S. Land Co.*, 263 Pa. 368, 107 A. 386 (1919)). Another factor in the view held by this state is the general dislike of forfeiture by our courts. See, *Corey v. Edgewood Boro.*, 18 Pa. Superior Ct. 216 (1901).

The court below, relying on the Pennsylvania rule of looking to both the intent of the dominant and servient tenement, admitted in evidence the deeds of conveyance in both parties' chain of title. It reasoned that these documents were relevant in the case of the defendant to show whether the hostility necessary to establish adverse possession had been displayed by the servient tenement; and, on the part of the dominant tenement, whether such indicated an intent to abandon. On both points, the lower court was correct. See, *McKee v. Perchment*, 69 Pa. 342 (1871).

The lower court decreed that the plaintiff had not lost the legal right to use the easement. While it found the evidence convincing, if not conclusive, as to an intent to abandon by the plaintiff and his predecessors in title, it based its final judgment on the conclusion that the necessary adverse possession on the part of the owner or owners of the servient tenement had not been established. This conclusion was dictated by language in the deeds in the defendant's chain of title, wherein the existence of the right to use the ease-

ment was continuously recognized and kept alive. In this the lower court was also correct.

However, we disagree with one crucial conclusion of the lower court wherein it stated, that the existence of the tree on plaintiff's land, as described before, and the board nailed across the garage doors had no effect on the outcome of the case. In this connection the lower court failed to recognize and apply one exception that exists in Pennsylvania to the rule of abandonment. It is this: If the owner of the easement by his own affirmative act renders use thereof impossible, or if he obstructs it in a manner that is inconsistent with its further enjoyment, the easement will be deemed to have been abandoned, even in the absence of adverse use on the part of the owner of the servient tenement. See, *Eagan v. Nagle,* 378 Pa. 206, 106 A. 2d 222 (1954).

In the instant case, the plaintiff, or his predecessors in title by whose actions in relation to the property he is bound, planted or permitted a tree to grow on the land now owned by the plaintiff which obstructed use of the easement to a material extent. Further, the same parties placed, or permitted to be placed, a bar across the doors of the garage serving as the only entrance to the easement right of way. These acts, in our opinion, were not mere inaction, but rather affirmative acts on the part of the plaintiff and his predecessors in title, which were sufficiently inconsistent with further use of the easement to constitute an abandonment thereof and to bring the issue squarely within the rule of *Eagan v. Nagle,* supra.

Decree reversed. Each side to pay own costs.