## Martin v. McDiffitt

*Floyd A. King*, for plaintiffs.
*Ewing B. Pollock*, for defendant.

TOOTHMAN, *P.J.*, June 9, 1976 — Plaintiffs are

the owners of a tract of 150 acres of land, located in Center Township in this county. On September 14, 1923, their predecessors in title granted a right-of-way to the Greensboro Gas Company, whose successor in corporate involvement is the Manufacturer's Light and Heat Company, a subsidiary of the Columbia Gas Systems, Inc., for the laying of a gas line across the land. The specific language of the grant, in its relevant part, is this:

". . . the right to construct, maintain, and remove a 12-inch, gas, pipe line, over and through my farm (in) Center Township . . . 127 rods.

"This right-of-way to continue so long as used for the above purpose . . ."

On March 17, 1969, the Federal Power Commission, acting upon the application of the Manufacturer's Light and Heat Company, issued its order permitting the company to abandon 5.7 miles of its 12-inch gas line, to be replaced with a parallel line in another location, a part of which crossed plaintiffs' property under the provisions of the terms of the right-of-way given in 1923. On January 26, 1970, the company notified the commission it had completed the abandonment of the old line, and the construction of the new line. Thereafter, on June 6, 1975, the company executed a bill of sale to defendant for removal of this old, 12-inch line, and included was that section of the line which crossed plaintiffs' property. Under the terms of the bill of sale, defendant started removal of the pipe and was halted in doing so by the landowners, who then filed this suit in trespass for damages for its removal. The testimony has been completed, arguments held, and briefs filed. It is before the court for final determination.

The right to the damage sought by plaintiffs is predicated upon their contention that the company had abandoned its easement across their land and also the ownership of the line and that, consequently, the ownership of the line reverted to them. In a recent case, the State Supreme Court in Ruffalo v. Walters, 465 Pa. 236, 238, 348 A. 2d 740 (1975), stated in precise language the requirements of the law for a determination of an abandonment, at page 741:

"In Pennsylvania, the law requires that there be showing of intent of the owner of the dominant tenement to abandon the easement, coupled with either (1) adverse possession by the owner of the servient tenement; or (2) affirmative acts by the owner of the easement that renders the use of the easement impossible; or (3) obstruction of the easement by the owner of the easement in a manner that is inconsistent with its further enjoyment. See Hatcher v. Chesner, 422 Pa. 138, 221 A. 2d 305 (1966)."

In that case, in enunciating the law in succinct fashion, the court upheld the finding of the chancellor below that there had been an abandonment of the easement for a millrace at a gristmill when a gasoline motor was installed on the mill and the millrace was no longer used. Also, it quoted at length from the opinion of the court's decision earlier in the Hatcher case, cited supra, where it was held that the easement in that case had been abandoned when the owner of the dominant tenement had planted or permitted a tree to grow in the middle of the easement and had also put a bar across the door of the garage which was the only access to it.

In the framework of the applicable law, we must now examine the pertinent circumstances of fact in the present case. The right-of-way was formally granted by instrument duly recorded, and was used for its intended purpose, apparently without any interruption, until the decision by the company to discontinue the use of the line by reason of its constructing a new transmission line in another location. These facts are all detailed in plaintiffs' exhibit 2, it being the findings and order of the Federal Power Commission on its issuance of a certificate of public convenience and necessity, that being the grant of authority by which the same was done. It is strongly urged upon the court, by defendant, that this proceeding has no bearing upon the matter before us. Admittedly, it is not conclusive of this issue, but it does give a valid basis of factual data supportive of plaintiffs' position in this case, such a base of information as is not usually available in easement and right-of-way questions that surface in court. The company, in its application to the commission, clearly stated its purpose and intention to abandon the line, it was given the authority to do so and, finally, it reported to the commission that it had done so. Also, the evidence shows that after the new line was constructed, replacing the one in question, the company cut both ends of the line, thus thereby insuring that it would not be in service. Further, after this was done, the company gave an adjoining property owner of plaintiffs' land permission in 1973 to remove the portion of the unused 12-inch line running across his land, the length being approximately 2,600 feet, which he took up in 1974 and used as his own.

When these indicies of intention, as shown by both the actions as well as the words of the com-

pany, are put together, they spell out a legal abandonment in unmistakable form. Even after the company had certified back to the commission that it had abandoned the line in question, it still waited five years before it attempted to assert its right of ownership or claim to the pipe. We do not find that the easement grant gave the company any right to store its pipe on the servient tenement's land after it abandoned the use for its original purposes.

At the hearing on this matter, there was some effort made to show that there is a distinction of meaning as to the word "abandonment" between its use in the oil and gas industry as related to, but different from, its meaning in the law. That may well be, but when the application to the commission was made, the company used only the one word to describe what it planned to do, and what it did do with this line, meaning, thereby, to take it out of use and that together with its subsequent actions, show a legal abandonment. All of these actions, thereafter, were consistent with the meaning of the term in law, that is, until it attempted to sell what it had clearly abandoned.

Counsel for plaintiffs argued that the grant of the easement in the form of this one creates a fee determinable. We do not agree, not finding the several types of fee interests in real estate applicable to easements. The only significance of the wording used in the grant before us is that it gave a continuing easement for the purposes stated. At the very most, when those purposes were not served, the easement right was terminated, and it thereafter gave the right to remove the pipe within a reasonable time after the abandonment of its original use. Five years we believe to be beyond the limits of a reasonable length of time. We have carefully examined the case of Dulaney et al. v.

Bishoff, 165 Pa. Superior Ct. 207, 67 A. 2d 600 (1949), and find it distinguishable from the instant case. While we understand the principle there stated to be accurate, that "an easement acquired by deed cannot be lost by mere nonuser," in this case there were active steps showing abandonment. The easement here created did not determine by mere nonuser as was held in that case. The abandonment is found here by reason of the second test stated in the Hatcher Case, that having been met by the company having done the affirmative acts that rendered the use of the easement impossible. By the time the company sought to sell the pipe to defendant in 1975, we are satisfied that the use of the easement for its original purposes had been rendered impossible by reason of its own affirmative acts, and that it had by that abandonment, persisted in for more than five years, forfeited its title to the pipe, title passing to the landowner, and the sale to defendant was void for lack of title.

## ORDER

And now, June 9, 1976, the court finds in favor of plaintiffs and against defendant in the amount of $4,125 for the value of the pipe, less the cost of taking. In the counterclaim, we find in favor of defendant and against plaintiffs in the amount of $630 for the cost of removal of the line and trucking expense, leaving plaintiffs due the sum of $3,495.