498 A.2d 902

**PHILADELPHIA MUSICAL ACADEMY and Pennsylvania Higher Educational Facilities Authority, Appellees,**

v.

**ACADEMY HOUSE, INC., Appellant.**

**PHILADELPHIA MUSICAL ACADEMY and Pennsylvania Higher Educational Facilities Authority,**

v.

**ACADEMY HOUSE, INC.**

**Appeal of PHILADELPHIA MUSICAL ACADEMY.**

Superior Court of Pennsylvania.

Argued May 23, 1985.

Filed Sept. 13, 1985.

---

David Berger, Philadelphia, for appellant (at 2399) and appellee (at 2499).

Kell M. Damsgaard, Philadelphia, for appellant (at 2499) and appellee (at 2399).

Before CAVANAUGH, CIRILLO and HESTER, JJ.

CAVANAUGH, Judge:

This case involves an appeal by the Philadelphia Musical Academy (PMA) and Pennsylvania Higher Educational Facilities Authority (PHEFA) from the entry of summary judgment in favor of the appellee, Academy House, Inc. Academy House, Inc. has filed a cross appeal at No. 2499 Philadelphia, 1984 from the order of Judge Stanley M. Greenberg dated December 8, 1982 granting the appellants an extension of time in which to file a certificate of readiness.[1]

The basis of the litigation is an easement which was granted by deed of partition in 1850 to the owners of real property located at what is now known as 1423 Manning Street, Philadelphia, Pennsylvania. The real estate on Manning Street is a narrow piece of land seventeen feet wide by some eighty feet deep running in a north-south direction. The easement, which was also referred to as an "alley" in the proceedings, extended from the northwest corner of the Manning Street property due west for one hundred twenty-three feet and then due south for a distance of eighty feet to Manning Street. The L shaped easement was ten feet wide. The Manning Street property at one time was a stable and is now used as a dressing room for the Shubert

1. The Academy House, Inc. appealed to this court on December 22, 1982 from the order of Judge Greenberg, and on May 27, 1983 we quashed the appeal since it was from an interlocutory order.

Theatre which is also located on an adjacent parcel of land. The appellants have an interest in the Manning Street property referred to as parcel B and the adjacent property sometimes referred to in this opinion as parcel A. Parcel A, known as 250 South Broad Street, has a ninety foot frontage on Broad Street and a two hundred foot frontage on Manning Street. Collectively, parcels A and B are known as the Shubert Theatre although the building on parcel A is a large 7-story building housing the theater itself and offices. The small structure on parcel B has dressing rooms and is connected to parcel A by a door through the party wall.[2]

The appellant's neighbors immediately north of their property is the Academy of Music, which also fronts on Broad Street, and which has been located at its present site for more than one hundred years. At the present time, the property immediately west of parcel B is owned and occupied by the appellee, Academy House, Inc. The Academy House is a 37-story condominium building containing over five hundred residential units, rehearsal hall and several stores and offices. The property on which the Academy House condominium is located is west of the Academy of Music and the Shubert Theater and fronts on Locust Street, Manning Street and 15th Street and is irregular in shape. Title to the land on which the Academy House is constructed was obtained in 1973 and construction was commenced in that year.

PMA acquired title to the Shubert Theater in approximately 1974. In August of 1976, after the Academy House was substantially completed, the appellants commenced an action in equity against the appellee seeking to enjoin it from encroaching upon the appellants' use of the alley. The appellants sought a "mandatory injunction ordering [Academy House, Inc.] to demolish that portion of its building which occupies [the] space defined by the said alley."

2. An understanding of the complex history and configuration of this easement is best aided by a review of plot plans and older photographs taken of the scene. The entire easement is now covered by the thirty-seven story building known as the Academy House.

The appellants also sought other relief, including punitive damages in the amount of $5,000,000.00, compensatory damages and counsel fees.

Counsel for the appellants did not file a certificate of readiness by August 31, 1980, as required by a Supreme Court order of November 19, 1979, No. 161, E.D.Misc.1979, known as the 240 Day Rule. However, new counsel for the appellants filed a petition for extension of time within which to file a certificate of readiness, *nunc pro tunc*. On December 8, 1982 the court below denied the appellee's motion for entry of a formal order of dismissal.

Depositions were taken below both before and after the order of December 8, 1982. The appellees filed a motion for summary judgment under Pa.R.C.P. 1035 which was granted by the court below.[3] It is axiomatic that summary judgment will be entered only in a clear case. *Hankin v. Mintz*, 276 Pa.Super. 538, 419 A.2d 588 (1980). However, summary judgment may be granted where the pleadings, depositions, interrogatories and admissions on file show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Goodman v. Pate Construction, Inc.*, 305 Pa.Super. 147, 451 A.2d 464 (1982); *Bollinger v. Palmerton Area Communities Endeavor, Inc.*, 241 Pa.Super. 341, 361 A.2d 676 (1976); *Community Medical Services, Inc. v. Local 2665, American Federation of State, County and Municipal Employees, AFL–CIO*, 292 Pa.Super. 238, 437 A.2d 23

---

**3.** Pa.R.C.P. 1035 provides in pertinent part:

**Rule 1035. Motion for Summary Judgment**

(a) After the pleadings are closed, but within such time as not to delay trial, any party may move for summary judgment on the pleadings and any depositions, answers to interrogatories, admissions on file and supporting affidavits.

(b) The adverse party, prior to the day of hearing, may serve opposing affidavits. The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issues of liability alone although there is a genuine issue as to the amount of damages.

(1981). *See* also, Pa.R.C.P. 1035(b). In the instant case, the pleadings, depositions and affidavits reveal that there were no genuine issues as to any material fact. The complaint alleges that the original Deed of Partition recorded in Deed Book C.W.C. 64/30 "granted an easement for passage and watercourses over an L-shaped alley" and describing the direction and distances over which the alley ran from appellants' property west and then south to Manning Street. There is no dispute as to the grant of the easement. Appellants' Exhibit 2, which was a survey prepared on June 23, 1972, referred to a "former 10 ft. wide alley" and clearly delineates the alley or easement in question. It is also undisputed that the actual alley no longer exists as the Academy House now occupies the area where the alley was formerly located. It is uncontroverted that the appellants have an interest in the two parcels of real estate referred to as parcels A and B at 250 South Broad Street (parcel A) and 1423 Manning Street (parcel B). In 1970 John Merriam entered an Agreement of Sale to purchase the Shubert Theatre then owned by the Jujameyn Trust. In December, 1972, Mr. Merriam assigned his interest in the agreement to PMA which then acquired title from the trust. In 1974, PMA transferred formal title to PHEFA in exchange for cash and a lease on the property.

With respect to the appellee, it was incorporated in 1972 for the purpose of developing the Academy House property. In May, 1973, the property west of the Academy of Music and the Shubert Theater was acquired from the Academy of Music Foundation as the site for the future Academy House condominium. At the time of the purchase the property immediately west of the Academy of Music was a parking lot and immediately west of the Shubert Theater was a parking garage. The parking garage was connected to the parking lot by a concrete ramp which directly passed over what had been the 10 foot wide alley and would have completely blocked it if the alley had still been there. Immediately after the Academy House, Inc. obtained title to the site for its proposed condominium building, the parking

garage on Manning Street was razed and the ground breaking ceremony occurred in June, 1973.

The controversy surrounding the easement did not first arise in these proceedings. On August 15, 1972, counsel for PMA wrote to counsel for the Academy House and stated that John Merriam had the premises at the northwest corner of Broad and Manning Street under an agreement of sale and stated that the agreement covered the Shubert Theater building and parcel B, referred to in the letter as property No. 78.

According to the enclosed data, it seems clear that the right to use the 10 foot alley which runs due west from the most northerly corner of property No. 78 and which then turns south at right angles connecting with Manning· Street, still pertains to property No. 78. We know of no deed or instrument of extinguishment.

The dispute concerning the easement was apparently not resolved and on October 9, 1973 counsel for PMA again wrote to counsel for Academy House and referred to the easement and the fact that no response had been received from his letter of August 15, 1972, more than a year earlier. The letter stated, *inter alia:*

*While I trust that both of the above matters can be amicably adjusted, the importance of doing so before your construction proceeds further is obvious. Unless, therefore, I have heard from you within the next several days, we will proceed with whatever legal actions we deem appropriate.* (Emphasis added) [4]

**4.** The letter of October 9, 1973 also stated:

On a different but equally urgent subject—in August of 1972, this office advised John Solomon of the claim of the owners of the Shubert Building to easement rights in a certain alley which runs westward from the western boundary of the Shubert Building across the premises now owned by the Academy House, Inc. and then southerly still through the Academy House premises into Manning Street.

There were meetings between John Merriam, John Solomon and Stephen Korn (Mr. Merriam was then equitable owner of the Shubert Building under Agreement of Sale—which he assigned to the Philadelphia Musical Academy prior to settlement). Formal notice of the claim of easement was given in Stephen Korn's letter

On October 12, 1973 counsel for Academy House replied to the letter of October 9, 1973 stating:

With respect to your client's claim of an easement over the former ten-foot wide, L-shaped alleyway, it is our understanding that Stephen J. Korn of your office was made thoroughly aware of the rejection of the claim by John Solomon, Esq., of the Montgomery, McCracken office as counsel for the Academy of Music Foundation prior to purchase by your clients of its property interests in the Shubert Theater.

Clearly, the owners of the alleged easement were aware of the claim of easement some time before they commenced the present action in equity which culminated in the entry of summary judgment.[5]

The crucial issue before us is whether the easement for an alley created in 1850 was still in existence when Academy House, Inc. purchased the land in 1973 on which the Academy House condominium now stands. One of the key factors in determining this is whether there was any access from parcel B to the alley. The photographs of the west wall of parcel B taken before the construction of the Academy House building, indicate what appears to be a solid brick

of August 15, 1972 addressed to John Solomon, a copy of which was delivered to you, since it was our understanding that you then (as well as now) represented Academy House, Inc. and that the premises which were subject to the easement were then under Agreement of Sale between the Academy of Music (the owner) and Academy House, Inc. We have had no written response to that letter and in order to expedite your present reply, I am enclosing herewith copies of the above mentioned letter of August 15, 1972, together with copies of the enclosures which are mentioned in that letter.

5. The complaint in equity refers to the creation of the easement: 10. In the original Deed of Partition of the common ground occupied by what is now each of 250 S. Broad and defendant's property, recorded at Deed Book C.W.C. 64/30, the owner of the premises now contained within 250 S. Broad was granted an easement for passage and watercourses over an L-shaped alley beginning at the rear of 250 S. Broad and being ten feet wide and running westerly for one hundred twenty-two feet, eight inches, and then southerly for eighty feet, into Manning Street (hereinafter "the alley"); the said easement was carried in all subsequent deeds for 250 S. Broad.

wall running north from Manning Street to the Academy of Music property. The uncontradicted testimony of several Academy of Music employees established that from at least 1947 until the Academy House was constructed there was never a door or window or any other means of ingress or egress along the west wall of the building on parcel B.[6] Prior to the sale of the land for the construction of the Academy House, a passageway was built that ran parallel to the west wall of that part of the Shubert Theater existing on parcel B and extended from a small door in the southwest corner of the Academy of Music building to Manning Street. Prior to the sale of the land to Academy House, Inc., the property west of the Academy of Music on Locust Street was a parking lot and it was connected by an inclined concrete ramp to an indoor parking garage facing on Manning Street. The ramp was on an incline of some twelve inches and it declined from the open air parking lot into the garage. The ramp crossed over what had been part of the ten foot wide alley and it existed from prior to 1952 until construction of the Academy House. In addition, the alley was obstructed by the construction of a covered passageway that ran parallel to the west wall of the appellants' property and its existence is noted on a survey prepared in 1972.

Mr. Merriam's testimony does not contradict the testimony that the west wall of the appellants' property had no openings whatsoever through which entry could be made to what had been an alley. He testified as follows:

6. Joseph E. Fleming, who had worked at the Academy of Music from 1947 to 1978, testified on deposition as follows:

Q. During that period from 1947 to the construction of the Academy House, was there ever a door or a window or any other means of ingress or egress along the west wall of the Shubert Theater?
A. Absolutely not.
Q. Was there a reason why you would have noticed the existence of that door had there been one?
A. Very definitely. Frequently the men would work in the Academy of Music and also in the Shubert Theater and that would have been the quickest way to get from the stage of the Academy to the stage of the Shubert. Had there been an entrance of any sort, it most certainly would have been used.

Q.   Now, on the west wall of the 2-story building, Parcel B—

A.   Yes.

Q   —was there any doorway?

.     .     .     .     .

A.   (continued) on the west wall on the inside you would see where there was a doorway that had been papered over, in the northwest corner leading into the alleyway, and *on the outside I couldn't tell what was there because a very low passageway had been built up against the wall from the Academy.*

BY MR. BROWN:

Q.   That is from the Academy of Music toward Manning Street; is that right?

A.   Over to an easement that they had acquired to go through the garage.

Q.   Through the interior of the garage?

A.   Yes.   They obtained an easement for that.   Now, then I could not see it at that time, the condition of the doorway leading out on the west end which you are asking about, but I saw it from the inside.

.     .     .     .     .

Q.   When you say a "door," I thought you said there was something that had been papered over that showed the outline?

A.   It had the frame in it, and it is a door and had been there for 50 years.

Q.   Was there any door handle?

A.   *No, because the door was closed from operation.*

Q.   Did you go out to the outside of the place where you saw the outline of the door inside and look at it from the west side?

A.   I have already testified that I did.

Q.   What was that surface?   Was it brick, or was it some other material, or couldn't you tell, the exterior surface of the place where you had seen an outline of a door inside?

.     .     .     .     .

A. *I couldn't see that, but I saw it later. It was brick.* (Emphasis added.)

The attorney for Mr. Merriam testified concerning the brick wall on the west side of parcel B as follows:

Q. Did you see any door through Parcel B to the outside in the northwest?

A. At the northwest corner there was no existing door, but you could definitely see from the conformation of the coloration, or whatever, the cover was—I don't remember whether it was brick or plaster, but you could tell that a door had existed there.

Q. Did you make any inquiry to anyone as to how long that door had been bricked up?

MR. SCHILDHORN: I don't think it has been established that the door had been bricked up.

MR. BROWN: Well, I will use any words Mr. Korn wants to; that it had been filled in or otherwise eliminated.

A. I talked to Sam Schwartz. *I believe Jujameyn, which is Mr. Merriam's predecessor in title, took title in approximately 1967. They had not bricked up the door or closed it off, so it had to predate them.* Other than that, I have not been successful in finding out when that door was in fact bricked or closed up.

Q. Have you made any effort since that time to find out?

A. We talked to the Shubert Theater people, Schwartz and Benedict, and they had nothing in their files that would shed any light on that.

It is undisputed that there was no means of ingress or egress from the property at 1423 Manning Street along the west wall from at least 1947 on. While an easement for an alleyway was created by the Deed of Partition in 1850, it was subject to being extinguished by conduct on the part of the owner which is inconsistent with the use of the easement. *Riefler & Sons v. Wayne Storage Water Power Co.,* 232 Pa. 282, 81 A. 300 (1911). *Eagan v. Nagle,* 378 Pa. 206,

106 A.2d 222 (1954) involved an easement over land created by deed. The easement was a forty foot roadway and Mr. Hall, the owner of the easement, placed a wire fence across the roadway containing a gate that was not on hinges but was wired firmly to two posts. He also piled a half railroad car of used bricks across the road. Trees and heavy shrubbery also blocked access to the road. Vehicles could not possibly enter or leave the property at that point and this continued for some eleven years. The Supreme Court held that the easement was abandoned and stated at 378 Pa. 212, 106 A.2d 225:

> While mere nonuser will not constitute an abandonment of an easement established by deed, *the law is clear that, if the owner of the easement by his own affirmative act renders its use impossible or obstructs it in a manner inconsistent with its further enjoyment, the easement will be deemed to have been abandoned.* (Emphasis added.)

In *Hatcher v. Chesner*, 422 Pa. 138, 221 A.2d 305 (1966) the plaintiff and defendant were owners of bordering pieces of improved land. In 1894 the common owner of both properties created an easement by deed of a ten foot wide right of way over the land owned by the defendant in favor of the land owned by the plaintiff. A garage was built across the right of way which was eighteen feet long with double doors, approximately nine feet in width, on both ends. On one end, the doors, when opened, extended over the plaintiff's land. For the right of way to be usable, the double doors on both ends of the garage would have to be opened and the right of way would then extend through the garage for a distance of eighteen feet. A tree had been allowed to grow on the plaintiff's property for thirty-five years in such proximity to the property that the garage doors could not be opened on the plaintiff's land. Also a board was nailed across the doors on the plaintiff's side which completely barred their use. The court held that the right of way had been abandoned since the owner or his predecessor in title had taken affirmative action which

rendered use of the easement impossible. The court stated at 422 Pa. 143, 221 A.2d 308:

> In the instant case, the plaintiff, or his predecessors in title by whose actions in relation to the property he is bound, planted or permitted a tree to grow on the land now owned by the plaintiff which obstructed use of the easement to a material extent. Further, the same parties placed, or permitted to be placed, a bar across the doors of the garage serving as the only entrance to the easement right of way. These acts, in our opinion, were not mere inaction, but rather affirmative acts on the part of the plaintiff and his predecessors in title, which were sufficiently inconsistent with further use of the easement to constitute an abandonment thereof and to bring the issue squarely within the rule of *Eagen v. Nagle*, supra.

In *Ruffalo v. Walters*, 465 Pa. 236, 348 A.2d 740 (1975) the Supreme Court found that the owner of a gristmill intended to abandon the easement for a millrace created by deed. The gristmill was torn down in 1948 some twenty-four years before the present owners of the easement attempted to reopen the millrace. A road had been built over the millrace and no water had run through it since the late nineteen thirties. The court held that there had been an intention to abandon the easement as the use of the easement was made impossible.[7]

Mere non-user of an easement by its owner, no matter how long continued, does not manifest an intent to abandon the easement. *Sabados v. Kiraly*, 258 Pa.Super. 532, 393 A.2d 486 (1978). In the instant case we have much more than failure to use. There was an intentional bricking up and closure of the wall by the appellants' predecessor in

---

7. The court stated at 465 Pa. 238–39, 348 A.2d 740:

   In Pennsylvania, the law requires that there be showing of intent of the owner of the dominant tenement to abandon the easement, coupled with either (1) adverse possession by the owner of the servient tenement; or (2) affirmative acts by the owner of the easement that renders the use of the easement impossible; or (3) obstruction of the easement by the owner of the easement in a manner that is inconsistent with its further enjoyment. See *Hatcher v. Chesner*, 422 Pa. 138, 221 A.2d 305 (1966).

title of the only means of ingress or egress from the appellants' property to the easement. For at least a twenty year period before the appellants obtained an interest in the Shubert Theatre properties, the wall had been solidly bricked in so that there was no access to the easement. Applying the law of abandonment of an easement, the court below properly found for the appellee as a matter of law.

The appellants argue that a state court may not invade private property rights without compensation and accordingly they allege that they could not be deprived of their rights in the easement. As we have noted, the easement was abandoned by the appellants' predecessor in title long before they acquired any interest in the properties known as parcels A and B. The appellants were not misled in any way concerning the easement as it was clear to them, or should have been, when they acquired their interest in the real estate that there was no access to what had been an alley from the Manning Street property as a solid brick wall completely blocked any access.

We briefly consider the appellee's cross appeals at 02499 of Philadelphia, 1984. The appellee argues that the court below erred in allowing the appellants to file a certificate of readiness *nunc pro tunc.* It is correct that the certificate was not timely filed but the Supreme Court rule which was in effect at the time the appellants filed their petition for allowance to file their certificate of readiness *nunc pro tunc* stated:

> the court, with or without motion by any party, shall require that good cause be shown why the case should not be dismissed for want of prosecution. . . .

The court within its discretion may grant an extension of time upon the showing of good cause and its decision will not be reversed in the absence of a manifest abuse of discretion. *Johnson v. Keystone Insurance Co.,* 299 Pa.Super. 187, 445 A.2d 517 (1982); *Drakes Mills Development Co. v. Northwest Pennsylvania Bank & Trust Co.,* 295 Pa.Super. 487, 441 A.2d 1338 (1982). We find no abuse

of discretion in granting the appellants an extension of time in which to file their certificate of readiness.

Orders affirmed.